## Crow v. Capital City Council, Appellant.

*Beneficial associations—Misconduct of members—Expulsion—Trial— Tribunal.*

Where the by-laws of a beneficial association provide that any member "who shall publicly attack or scandalize the national council," etc., may "be expelled from the order," a member may be expelled where it appears that he has neglected and refused to obey the supreme law of the order, urged secession of members, attempted to bring discredit upon the order and to bring the national council into disrepute, attempted nullification of the authority of the national council, and encourged insubordination and rebellion among members.

In interpreting the rules and regulations prescribed by beneficial societies the civil courts are always inclined to sustain them and mere informality in the proceedings for removal of a member will not justify interference by mandamus when it is evident that there are just grounds for expulsion, and that the accused has been acting in hostility to the organization.

Where a member of a beneficial association is summoned for trial before a tribunal established by the laws of the association, and the member files an answer, employs counsel, and appears at the meeting of the tribunal, but, for purposes of his own convenience, withdraws before his case is reached, and the trial is conducted in his absence in a fair and proper manner, and after conviction he does not ask for a retrial in the manner provided by the laws of the association, he has no standing to maintain a mandamus suit in a civil court to secure his reinstatement.

Argued March 16, 1904.  Appeal, No. 11, March T., 1904, by defendants, from judgment of C. P. Dauphin Co., Sept. T., 1902, No. 274, for plaintiff on trial by court without a jury in case of Wilmer Crow v. Capital City Council No. 327, Jr. O. U. A. M., Irvin C. Keel Councilor et al.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.  Reversed.

Mandamus to reinstate a member of a beneficial association

412    CROW *v.* CAPITAL CITY COUNCIL, Appellant.

Statement of Facts—Opinion of Court below. [26 Pa. Superior Ct.

The case was tried by agreement before WEISS, P. J., without a jury.

WEISS, P. J., filed the following opinion :

Wilmer Crow, the plaintiff, is a member of the defendant council, a fraternal and beneficial association, which was incorporated by a decree of this court, pursuant to the provisions of the Act of 1874, P. L. 73, and its supplements, May 27, 1901, and continued to be a member until September 11, 1901.

On that day he was expelled from membership in said council by virtue of an order issued by a body styled the national judiciary, which directed the defendant council to execute the same under penalty, by the adoption of a resolution formally expelling him from membership in the order, which was obeyed.

The plaintiff was charged, among other things, with " the publication and spreading of various newspapers, periodicals and circulars among the members of the order in the attempt to bring discredit upon the order, and to bring the national council thereof into disrepute," which charge was preferred by Wobensmith, state councilor, and others against him, along with others and laid before the national judiciary.

Among the laws adopted by the national council, and which the plaintiff was charged with having violated was one known as section 3, Chapter 1, Division VI. which provides that :

" Any member of the order . . . . who shall publicly attack or scandalize the national council, the national judiciary, a state council, or a state judiciary, or any council, or the members of any of these bodies shall be guilty of an offense against the order, and upon a trial and conviction may be reprimanded, suspended definitely, or be expelled from the order."

Notice was given the plaintiff that a hearing of the complaint, a copy of which accompanied it, would be given December 17, 1900, Odd Fellows Temple Building in the city of Philadelphia, commencing at 10 o'clock A. M. ; and the matter was so proceeded with by the national judiciary, before which the plaintiff appeared and was represented by counsel, that a finding against the plaintiff of " guilty as charged " was made and a decree of expulsion promulgated.

The junior order of the United American Mechanics consists of a national council, state councils and councils.

The national judiciary is appointed by the national board of officers, the members of which constitute the executive department and the members of the former are along with others component parts of the national council. The national judiciary asserts jurisdiction over the matters in complaint by virtue of the provision in the constitution of the order viz: " Of all controversies whatsoever, the character of which is such that there is no inferior tribunal having complete jurisdiction."

The order is composed of white male persons who have qualified, were duly initiated.

Among the provisions of the constitution is Article IX, Sec. 11, which reads :

" The national judiciary shall have original and appellate but not exclusive jurisdiction in all matters wherein is involved non-conformity to, violation or construction of, the supreme law of the order."

Among the laws is Sec. 10, Chapter 1, Division VI, which provides :

" For all offences against the order whereof the penalty upon conviction, is either suspension or expulsion, the power thereto shall be lodged with the council of which the offender is a member. And it shall be incumbent upon every council, upon notice to execute the judgment of suspension or expulsion with respect to any of its members, rightfully issuing from a higher body, or else subject itself to the penalty prescribed in Section 7, hereof."

The plaintiff was manager of the Pennsylvania edition of a periodical called " The New Jersey Junior American Mechanic " in the columns of which appeared matter, responsibility for which is placed by the national judiciary in its findings upon the plaintiff, " Crow, manager of the paper."

The following is an article published October 7, 1899 :

" And when this fact dawned upon the national administration they immediately set out to stifle and choke to death the will of the assembled representatives and hatched up the conspiracy that ended in the farcical presentation of charges of insubordination."

In another issue of date March 15, 1900, the following occurs :

" The state council of Virginia has not been idle ; by her ac-

tion she secures to Virginia Juniors release from the humiliation and the thralldom of the national council, etc."

In the issue, in an editorial entitled " Test of Loyalty," the following appears :

" Such advice as the above might have been expected to be given to a council by a national secretary, and would be in keeping with the rule or ruin policy of the national council," etc.

In that of October 8, 1900, is the following unsigned article :

" Probably our view of this method of determining disputed questions . . . . or alleged violation of law is somewhat jaundiced ; but if so, it is no doubt due to an exhibition given by the national judiciary in Philadelphia when they affected to try the state council of Pennsylvania on charges preferred by the national council.

" We pray there may never be such another exhibition in our order as occurred there, and we don't desire to be mean or sarcastic either, when we assert that for an all 'round exhibition of cant, hypocrisy, dignified jugglery and farcical results this alleged court takes the prize."

In an issue of date November 29, 1899, the plaintiff as generally, is held responsible for, and adjudged by, what appears in the columns of the paper of which he is manager, and it is this that is complained of though signed by another :

" This activity on the part of our councils and members is a most hopeful sign for the ' 324 ' who are contending for justice and fair treatment, against the arrogant, despotic, high-handed work of the national council.

" The proceedings at Minneapolis (the national council) were simply the end of the long train of abuses and usurpations, having for their object the reduction of the eastern states under absolute despotism, and the foisting of an office-holding oligarchy upon our order.

" It makes little difference whether the national council restores or revokes its paper charter; we can live without that body and save money. . . . Let us stand resolutely opposed to the tyrannies, infamies, and outrages of the national council."

In the same edition appears the following over the initials of another, which relates to the judiciary in session :

" A gigantic farce.   A burlesque of justice.   A comedy on legal proceedings.

" The national judiciary goes through the form of hearing the said of National Councilor v. the State Council of Pennsylvania."

The Pennsylvania edition of the " New Jersey Junior American " was published monthly, and on the department staff was " Manager Wilmer Crow, Harrisburg, Pa.," and underneath, " Subscriptions will be received by Wilmer Crow, Harrisburg, Pa."

His duties as manager, or among them, were " to receive subscriptions and forward the mailing list to New Brunswick, N. J., as the issues of the paper appeared.

He did not supervise the articles, had never seen any of the four articles and none were presented to him or passed through his hands before publication.   He saw them after their publication, and continued as manager after he had seen them.

There was no witness called in support of the complaint, no testimony produced respecting the nature of the duties of manager, no evidence that the plaintiff circulated the papers, no admission made, and all that was done at the time of the trial was the offer in evidence of four or six copies of the paper by the professional representative of the complainants.

The plaintiff's case was reached about two o'clock in the morning, December 1, 1900.   He was absent in person and his counsel who was present stated that he, the plaintiff, had ceased connection with the paper, and after the disposition of the case no application was made for a rehearing as might be done, and as the body sitting was the final tribunal, no appeal was or could be taken.

The plaintiff seeks reinstatement by proceedings in mandamus into fellowship with the defendant council and to the enjoyment of the rights and privileges afforded thereby, and claims that the order made by the national judiciary directing the defendant to expel him from membership was illegal, and that the resolution of expulsion made by the subordinate council was nugatory.

Whether it was or not depends upon the observance of rules in the course of procedure, which obtained in the trial of causes

before a tribunal organized for the administration of justice according to the law of the land.

Beyond the offer of some half dozen newspapers containing the objectionable articles, there was no evidence had or received. These newspapers informed the judges that the plaintiff was " Manager " and that " subscriptions will be received by him " and gave his address " Harrisburg, Pennsylvania."

To warrant a conviction of the offense charged, it was incumbent upon the trial court to ascertain from the testimony in the case that the plaintiff was so related to the " New Jersey Junior American Mechanic " that he controlled or aided in controlling and directing the policy of the periodical.

If he acted in a clerical or canvassing capacity merely, or was so connected with it that he was charged with its business management only he could not be held guilty of an " attempt to bring discredit upon the order " or " the national council thereof into disrepute."

What is generally understood by the term manager of a newspaper is that its financial interests are intrusted to him, and that this employment is usually disassociated from that which shapes its editorial and public policy.

The fact that he received subscriptions emphasizes this view, and entailed upon the tribunal trying him the duty of further inquiry before entering a judgment, execution upon which deprived him of a valued right.

It was imperative to have it appear that he " by the publication and spreading of various newspapers, periodicals and circulars among the members of the order " brought discredit upon the order or disrepute upon the national council, before the trial body could convict or as a consequence reprimand, suspend or expel.

The position of manager of a newspaper and of a receiver of subscriptions therefor is more suggestive of an absence of control over its columns, than persuasive of a right of control or the fact that he exercised such control; and while he submitted himself by becoming a member to the laws of the order, he did not thereby submit himself to the deprivation of a right secured by that membership, unless he had a trial in the mode prescribed by the law of the land, subject to, and by virtue of, which the

law of the order and course of its procedure as well as the order itself have existence.

The complaint against the plaintiff was made to the national judiciary by members of the state council of Pennsylvania and as officers of the order, none of whom were assailed in the published articles, and by certain other persons on their own behalf and others, members of the state council, who were not reflected upon individually or officially. It was the national council and the national judiciary which were the objects of censorious comment. And because the trial tribunal was animadverted upon, should proofs have been elicited to show the plaintiff's relation to the publication, and dissemination of the periodicals, in order that the verdict would carry the stamp of impartiality and be devoid of untoward reflection. If the judges had been put in possession of the testimony of witnesses as this court was in the case now being considered, a different verdict might have been rendered and it is the absence of material evidence before that tribunal that begets the conclusion that no trial was had, the result of which would justify the deprivation of the plaintiff's membership in the defendant council.

He neither wrote nor was privy to the writing, nor saw or had knowledge of the articles published until thereafter, and did not circulate or cause to be circulated any copies containing the inflammatory articles. To show that he was in some way responsible for the publication or circulation was necessary to support the conviction. It was a trial by inspection of the periodicals which do not evidence facts from which a reasonable and well-grounded inference could be drawn that the plaintiff was guilty of the publication or dissemination of the articles, nor that his position and duties were such as to justify the conclusion that by reason thereof he was guilty of the offense charged.

There was no " examination of the matter of fact in issue," without which there can be no determination of the issue according to the law of the land, and the execution had upon the verdict and judgment must be declared invalid and, therefore, inoperative.

The national judiciary has original jurisdiction over matters involving a violation of the laws of the order. It had concurrent jurisdiction " with the council of which the offender may

be a member " in matters involving suspension or expulsion, but it has not exclusive jurisdiction in matters of which the " inferior tribunal " or subordinate council has " complete jurisdiction." Sec. 11, and sub-division 7, Sec. 10, Article IX, of the Constitution and the first clause of Sec. 10, Chapter I, Division VI, National Laws, and it acquired jurisdiction of the plaintiff person.

But that was only one step towards the object to be attained. In view of the elaborate code adopted by the order, it must be assumed that the methods of procedure and the rules of evidence which obtained in courts of justice are part of its system. The error lies in the nonobservance of these rules and methods of procedure which the law, as well, it is believed, of the order, as that of the country has ordained for the ascertainment and establishment of the truth.

It is not necessary to decide whether the national judiciary could direct the defendant council to execute the order of expulsion in a proceeding to and in which the council was not a party.

It is sufficient to decide that there was no trial of the plaintiff and accordingly no conviction and judgment upon which an eviction from the order or from the defendant council could lawfully be founded.

There is another view point which the case presents. The judges say that " the manager of this edition, unless he makes disclaimer, must be held accountable for, and be adjudged by, whatever appeared in its columns." It is not clear whether a disclaimer was intended by the statement of the plaintiff's counsel at the time of the hearing before the national judiciary that " his," the plaintiff's, " connection with the paper, whatever it had been, had ceased," and it is probable that this was a matter for the trial tribunal to determine.

But the proposition as stated, in the absence of proof relating to his duties as manager of the periodical, whose published province was the solicitation of subscriptions, does not commend itself as sound, especially as the disfranchisement of membership was of that which the courts have called a " franchise " and " property rights." The facts are not unlike those found in Weiss v. Musical Mutual Protective Union, 189 Pa. 446–450 : " No testimony was taken, nor was there any effort

made to show that the manifesto was circulated by plaintiffs, or that it tended to disrupt or destroy the union, or cause the withdrawal of members, nor indeed was there anything to sustain the charges against plaintiffs, and they after protesting as before, withdrew from the meeting: " Evans v. Philadelphia Club, 50 Pa. 107.

In that case the defendant was incorporated under the laws of Pennsylvania, the charter of which " contains no power of expulsion." In this case, the national council of the order became a body corporate under the act of 1874, and its supplements, and at a convention held thereafter adopted a constitution, which, among other things, provides for, and vests supreme judicial powers in, the national judiciary and the judges thereof and enacted laws defining, among other things, offenses against the order, which constitution and laws are "for the government of the Junior Order of United American Mechanics."

The corporation is founded " for beneficial or protective purposes to its members from funds collected therein " and neither the charters nor the law under which it came into being gives the power of expulsion. The constitution and laws adopted by the corporate body, however orderly and complete the system of legislative, executive and judicial powers are, in contemplation of law—by-laws—which in the 5th section of the Act of April 29, 1874, P. L. 73, are required to " prescribe the time and place of meeting of the corporation, the powers and duties of its officials, and such other matters as may be pertinent and necessary for the business to be transacted and may contain penalties for the breach thereof, not exceeding twenty dollars."

Unless the constitution and laws have higher potency than the law creating the corporation there may be force in the plaintiff's contention that it is restricted to the penalty prescribed by the creating act. Conceding, however, every endeavor and all reasonable latitude on the part of the tribunal sitting, to rightly interpret the laws, to justly discipline offenders and perpetuate the order of government to which the plaintiff voluntarily subjected himself, it does not seem fitting to say, in the absence of evidence other than the articles, that he attempted to bring discredit upon the order or disrepute upon the national council by the publication and circulation of the

periodicals, and thereby publicly attack or scandalize the national council or the national judiciary, or the members of any of these bodies. The verdict and judgment are not conclusive upon a judicial tribunal because there was no trial had and conducted by the judges sitting as the national judiciary according to the law of the land, and not according to the law of the order itself, which sanction reprimand, suspension or expulsion only " upon trial and conviction," and that must mean trial and conviction according to the law of the place, territory or jurisdiction wherein it had its origin and has existence.

This case was submitted under the provisions of the Act of April 22, 1874, P. L. 109, for decision by agreement in writing by the parties to the suit, in which trial by jury was waived and it is ordered that judgment be entered for the plaintiff and that a peremptory writ of mandamus issue and the costs of the proceeding be paid by the defendant, if exceptions be not filed as‑provided by law within thirty days after service of notice that such decision has been made.

*Error assigned* was the judgment of the court.

*W. U. Hensel,* with him *A. D. Wilkin* and *Meade D. Detweiler,* for appellants.—The national council has the inherent power of explusion of a member for an offense against his duties as a corporator: Weiss v. Musical Mut. Protective Union, 189 Pa. 446.

A sufficient trial was accorded appellee before the order's tribunal, and the same was conclusive upon the lower court: Com. v. Union League, 135 Pa. 301; Com. ex rel. Bryan v. Pike Beneficial Society, 8 W. & S. 247; Com. v. German Society, 15 Pa. 251; Toram v. The Howard Beneficial Association, 4 Pa. 519.; Black & White Smith's Society v. Vandyke, 2 Wh. 309; Society for Visitation of Sick v. Commonwealth ex rel. Meyer, 52 Pa. 125; Appeal of Aaron Sperry et al., 116 Pa. 391.

*Frank M. Eastman,* for appellee.—The court below was justified in inquiring into the circumstances of the appellee's trial: Com. v. German Society, 15 Pa. 251.

The appellee did not have a fair and impartial trial: Schwereger v. Society, 13 Phila. 113 ; Marion Beneficial Society v. Com., 31 Pa. 82 ; Society v. Com. ex rel., 52 Pa. 125.

The national council has no power to provide for the expulsion of members from the order for violation of its laws, except for the common-law causes, viz.: the commission of an infamous crime, or of some act destructive of or injurious to the order : Mulroy v. Knights of Honor, 28 Mo. App. 463 ; People v. Fire Department of Detroit, 31 Michigan, 458.

In Pennsylvania the rule relative to expulsion from corporations without capital stock and from unincorporated associations is as follows :

1. If there be neither by-law nor charter provision for expulsion, the same may be made only for conviction of an infamous crime, or for an act injurious to or destructive of the corporation or association : Com. v. St. Patrick's Ben. Soc., 2 Binn. 441 ; Evans v. Phila. Club, 50 Pa. 107 ; Weiss et al. v. Musical Mut. Protective Union, 189 Pa. 446.

2. If there be no charter provision, the courts will sustain reasonable additional causes for expulsion, provided for by by-laws, but not indefinite or trivial ones : Evans v. Phila. Club, 50 Pa. 107 ; Leech v. Harris, 2 Brews. 571.

OPINION BY ORLADY, J., November 21, 1904 :

The plaintiff was a member of the Junior Order of American Mechanics, and a representative from the state of Pennsylvania in the national council of the organization ; charges were preferred against him before the national judiciary, the highest judicial tribunal and the court of last resort within the order, and after a trial and conviction thereby he was expelled from membership in Capital City Council, the defendant. He presented his petition to the court of common pleas of Dauphin county for a mandamus upon the defendant council to restore him to membership. An answer was filed, and, by agreement of counsel, the cause was heard before the court without a jury ; which resulted in a judgment for the plaintiff and that a peremptory writ of mandamus be issued to restore him to membership, etc., from which judgment the defendant took an appeal.

The history and purposes of this organization, and the relation of the several subordinate bodies to the national council are succinctly stated by Mr. Justice BROWN in Derry Council v. State Council, 197 Pa. 413. From the record it appears that the contentions in the order, as set forth in the decision of that case, were continued and this plaintiff was actively identified with the branch or division called "Insurgents."

While twenty-three assignments of error are presented for consideration, the questions involved narrow the inquiry to : (1) The court's conclusion of law that "neither the charter (of the national council) nor the law under which it came into being gives the power of expulsion" to the tribunal making the decree of which the plaintiff complains (19th assignment) ; and (2) the court's finding of fact and conclusion of law that "there was no examination of the matter of fact in issue and the execution had upon the verdict and judgment must be declared invalid and therefore inoperative." (15th assignment.) To these propositions counsel on both sides have confined their arguments.

The organization of which the appellant is a subordinate division is a purely beneficial one, and is conducted not for profit and without capital stock. It necessarily possesses the inherent power to expel any of its members from membership for offenses which affect the life and integrity of the organization by becoming insubordinate to the supreme authority and resisting the enforcement of the supreme law, if the exercise of that power is not expressly prohibited by statute or its charter. It is conceded by the appellee that it has the right of expelling a member for the common-law causes, to wit: conviction of an infamous crime, or for an act injurious to, or destructive of the organization even if there be neither by-law nor charter provision therefor. It is manifest that the charges preferred against this plaintiff and those identified with him, if clearly proved, were seditious and treasonable attacks against the order, and if not promptly repulsed would inevitably result in its disruption. The doctrine is as old as St. Mark's announcement, "If a kingdom be divided against itself, that kingdom cannot stand." The complaint charged that the plaintiff, and the others, identified with him neglected and refused to obey the supreme law of the order; urged secession of members; at-

tempted to bring discredit upon the order and to bring the national council into disrepute; attempted nullification of the authority of the national council; and encouraged insubordination and rebellion among members.    The exhibits and specifications attached to the bill of complaint, if sustained by evidence, place the offense charged clearly within the provisions of the National Laws, Division VI, chap. 1, sec. N. 3 : "Any member of the order . . . . who shall publicly attack or scandalize the National Council, the National Judiciary, a state council or a state judiciary or any council or the members of any of these bodies shall be guilty of an offense against the order, and upon trial and conviction may be reprimanded, suspended indefinitely, or be expelled from the order."    Organizations of this character cannot serve the purpose of their creation unless there is a strict disciplinary authority in the department having ultimate power to hear and decide all controversies between members and the grand or the subordinate bodies.    The decision of such courts of last resort must be accepted and obeyed as representing what is best for the organization.    In interpreting the rules and regulations prescribed by their laws, the civil courts are always inclined to sustain them, and mere informality in the proceedings for removal will not justify interference by mandamus when it is evident that there are just grounds for expulsion and that the accused has been acting in hostility to the organization: High on Extraordinary Remedies, sec. 301 ; Com v. Union League, 135 Pa. 301.    When this appellee became a member of the order he was bound in duty as well as in honor to give allegiance to its constitution and by-laws.    His trial and conviction was by a tribunal of his own choice and if lawfully conducted concludes him : Sperry's Appeal, 116 Pa. 391.    It follows that the charge, if sustained, furnished ample reason for the order of expulsion.

Nor is his position any better on the other phase of his case. He recognized the right of the national judiciary to conduct the trial.    He made answer to the complaint, selected counsel to represent him, and appeared at the time and place set for the hearing.    He knew that the cause was the next on the list for hearing and that it might be called at any moment.    After knowing that his application for a continuance was refused

he acted with a view to his personal convenience alone in leaving the court. He should not be heard in objecting to the degree of proof adduced or to the formality of the trial he evaded when he could have made it explicit by remaining and making his defense. After the decision was rendered against him, he did not make an application for a rehearing of the case which he could have secured upon making a satisfactory showing to the national judiciary within thirty days of the rendering of the judgment against him. He not only did not avail himself of this privilege under Division III, chap. 3, sec. 1, of the National Laws, but waited nearly a year before he presented his petition for mandamus.

Trials of such a character need not be conducted with absolute technical accuracy. It is sufficient if the proceedings are regular and conducted in good faith; the accused has been accorded a full and fair hearing and a proper finding and judgment has been entered on the facts: Com. v. Union League, 135 Pa. 301; Beach on Priv. Corps., sec. 91; Niblack Benefit Soc., secs. 36, 37, 38, 39; McAlees v. Supreme Sitting, Order of the Iron Hall, 13 Atl. Repr. 755. The courts will entertain jurisdiction to restore a member by mandamus where the cause is insufficient or the proceedings irregular; but, they will not inquire into the merits of what has passed in a regular course of proceeding: Com. v. German Society, 15 Pa. 251; Sperry's Appeal, 116 Pa. 391. On the conceded facts the appellee has not been denied any right. He had at least an opportunity for a full trial on the merits of his case and waived it by voluntarily absenting himself therefrom; the hearing was fairly conducted, was regular under the rules of the order, and the result reached was amply justified by the admitted facts. Though the hour at which the court heard his case was inconvenient for him it was doubtless as much so for the tribunal convened for that purpose and was not so unfair to him as to vitiate its findings. Although he had full knowledge of the gravity of the charge against him he persisted in defiant opposition to the established authorities, and must have known that the result of his contention would be to disrupt the organization as it then existed. He again waived his right to a retrial and he must be held precluded by the findings and decree of the court to which he was bound by the by-laws of the order to submit

his conduct and which he recognized as having jurisdiction over him and the subject-matter being investigated.

The judgment of the court below is reversed.