## Foltz v. Sharpsville Beagle Club, Inc.

*John Q. Stranahan,* for plaintiff.

*Joseph J. Nelson,* for defendant.

McKAY, J., December 6, 1960.—On September 14, 1960, plaintiff filed a complaint in mandamus against defendant alleging that he had been illegally expelled from membership in defendant corporation, and asking the court to order that he be reinstated. He alleged that his expulsion was illegal in that it was conducted contrary to the bylaws and for insufficient grounds. A responsive answer including new matter was filed by defendant which admitted most of the facts set forth in the complaint but denied the legal effect thereof claimed by plaintiff and averred in addition that plaintiff had waived his rights under the bylaws.

On November 25, 1960, a hearing was held, testimony was taken and the issues were argued by counsel who thereupon agreed that we should proceed to dispose of the case on its merits.

The facts are in the main undisputed and are as follows.

The Sharpsville Beagle Club, Inc., is a nonprofit

corporation which is organized to promote interest in beagle hounds.[1]

Plaintiff joined the club in 1957 and has been a member in good standing until the present dispute arose in the summer of 1960. He owns, breeds and trains beagle hounds which he enters in exhibitions and trials. Some of these dogs cost as much as $500 and upwards. Membership in a beagle club is one of the requirements for one to be eligible to enter dogs in certain trials and exhibitions. Hence, plaintiff's membership in defendant club is of considerable value to him.

At the regular monthly meeting on May 2, 1960, plaintiff undertook to challenge the proposed admission of an applicant for membership by the name of James Mymern, while he, plaintiff, was under the influence of intoxicating liquor. In so doing, he made remarks derogatory of the applicant which were resented by many of the members present. Subsequently, when this incident came to the attention of Mymern, he complained in writing to the secretary of the club. At a club meeting held July 11, 1960, at which plaintiff was present. Mymern's letter was read and discussed by the members. The sense of the meeting was that plaintiff should be disciplined for the misconduct complained of. However, when his expulsion was considered the vote was eight to six against expulsion.

When Mymern learned of plaintiff's remarks at the May meeting, he was offended and told one of the officers that if plaintiff continued to be a member, he,

---

[1] According to its bylaws, or, as it calls them, its constitution, the purposes of the club are "to encourage the breeding and improving of, and to promote interest in, the Beagle. To acquire and maintain suitable grounds and equipment for training and exhibiting the Beagle."

Mymern, did not want to join the club, and at the August 1st meeting Mymern submitted a letter of resignation. It was not accepted. Because of the dispute between Mymern and plaintiff, the club, at the August 1st meeting, voted to relieve plaintiff of certain responsibilities as a member, namely membership of the house and grounds committee and delegate to the Mercer County Council, and forbade him to use the club grounds for one year beginning August 1st.[2]

When plaintiff received notice of this action, he contacted the president of the club, Thomas Fisher, and objected to the disciplinary action, and demanded that the club either restore him to full privileges of membership, or expel him, and that they should act one way or the other within 10 days.[3] Plaintiff also wrote to the secretary asking why the club had taken this action. He received no reply to this inquiry.

As a result of plaintiff's demand, a special meeting of the club was held on August 28, 1960. The minutes of that meeting stated that the purpose of the meeting was to reconsider the case of Carl Foltz and added: "Carl Foltz contacted President Tom Fisher and stated to Tom Fisher and he (Carl Foltz) would not accept the penalty imposed upon him by the club. Carl Foltz stated to Tom Fisher that he (Carl Foltz) be either expelled from the club or receive no penalty at all. This was an ultimatum, as he told Tom Fisher that the club had 10 days to reconsider." At the meeting, the members reconsidered the whole dispute and, after discussion, voted to expel plaintiff by a vote of 14 to 2.

---

[2] The letter of the secretary informing plaintiff of this action stated also that he had been placed on probation for one year. The penalty of probation, however, does not appear in the minutes.

[3] Plaintiff denied the testimony of Fisher on this point and stated that he merely challenged the right of the club to expel him. However, we accept the testimony of Fisher.

Plaintiff thereupon filed the present complaint asking the court to compel his reinstatement as a member of the club.

The first question that confronts us is: What was the effect of plaintiff's demand to Fisher in August following his suspension that he be either restored to full membership or expelled? Did this action on his part open the whole question of the propriety of his conduct at the May meeting and thereby impliedly authorize the members of the club to consider de novo what discipline to administer to him for his misconduct? In our opinion it did.

The minutes state that the purpose of the meeting of August 28th was "reconsidering the case of Carl Foltz." The notice of the meeting sent by the secretary to plaintiff under date of August 15, 1960, stated: "The purpose of this meeting is to reconsider the (conduct) case of Carl Foltz at the last June 6th meeting. Also the meetings of July 11th and August 1st, 1960." Accordingly, it is obvious that the club met at the special meeting on August 28, 1960, to reconsider the whole incident involving plaintiff and Mymern and to determine anew what action, if any, the club should take upon it.

Plaintiff contends that the club could not vote again upon his expulsion at the August meeting since it had voted against expulsion at the meeting of July 11th. Plaintiff points to section 6 of the constitution dealing with expulsion, the last sentence of which reads: "If the affirmative ballot vote (for expelling a member) be less than two-thirds (2/3) in number the action shall be *automatically squashed.*" He contends that in view of this provision in the bylaws, the action taken at the July 11th meeting wherein the members voted not to expel him was final, and could not be reconsidered by the club.

This would be true were it not for the fact that plaintiff himself waived his right to claim that the July action was final when he demanded that the club either expel him or restore him to full membership. In our opinion, this demand amounted to a consent on his part to a reconsideration by the club of the whole matter of his discipline and placed the club in a position where it could lawfully expel him provided, of course, it had the right under the law to expel him in the first place for the reason assigned. Plaintiff having, in effect, asked the club to reconsider the whole question of his discipline, cannot now complain that it did so reconsider it.

The more fundamental question in this case, however, is the second issue raised by plaintiff, viz., whether the club had the right to expel plaintiff at all solely because of his conduct at the May meeting. This conduct, as we have stated, consisted merely of offensive remarks made during the discussion of a motion to admit Mymern as a member while plaintiff was intoxicated. It is apparent from the record that this conduct offended Mymern more than anyone else. It was Mymern who insisted that either he or plaintiff must leave the club, and apparently the essence of the dispute is that the club preferred to retain Mymern rather than plaintiff as a member.

Can a nonprofit corporation of the type of defendant legally expel or suspend a member for a minor act of misconduct of the type committed by defendant?

The answer to this question depends upon the provisions of the bylaws of the corporation which deal with expulsion and suspension.

If the bylaws specifically provide that a member may be expelled or suspended for disorderly acts at meetings and the club acts in good faith, such disciplinary action by the club is lawful and will be upheld:

4 Am. Jur. 470; Commonwealth ex rel. Burt v. Union League of Phila., 135 Pa. 301.[4]

When, however, the bylaws are silent upon the subject of expulsion, or, as in the present case grant the power in general terms, there are but three legal causes of disenfranchisement, namely, (1) offenses of an infamous character, indictable at common law; (2) offenses against the member's duty to the organization, that is, acts tending to the destruction or injury of the society; (3) and offenses compounded of the two: 4 Am Jur. 470; Weiss v. Musical Mut. Prot. Union, 189 Pa. 446; Evans v. The Philadelphia Club, 50 Pa. 107.

Examples of offenses against the member's duty to the organization are urging members to secede from the national association and encouraging insubordination among members, as in Crow v. Capital City Council, 26 Pa. Superior Ct. 411, and making incendiary addresses and inserting advertisements in newspapers which tend to bring the organization into disrepute, as in Badger v. Aeolian Council No. 17, 39 Pa. Superior Ct. 406.

It is self evident that for an intoxicated member merely to rise in a club meeting and speak derogatorily of an applicant for membership when the latter's application is under consideration by the club does not

---

[4] In the case of Commonwealth ex rel. Burt v. Union League of Phila., supra, the court held that the charter itself must provide for the right of expulsion in order for bylaws to authorize an expulsion for disorderly acts.

In the present case, the charter was not introduced in evidence, but the Nonprofit Corporation Act of May 5, 1933, P. L. 289, sec. 403, as amended, 15 PS §2851-403, provides that the bylaws may contain provisions for the regulation and management of the affairs of the corporation, and may provide penalties for the breach thereof. Hence, the right to expel need no longer be set forth in the charter.

amount to either being guilty of an indictable infamous crime or attacking the organization.

The bylaws of defendant corporation deal with expulsion only in general terms, that is, they recognize the right to expel members but do not specify disorderly conduct at meetings or any other particular acts as grounds for expulsion from membership.[5]

It follows that defendant corporation can only suspend or expel members for the common law causes listed above and that its attempted expulsion of plaintiff for his misconduct at the May, 1960, meeting was illegal and void.

## Order

Now, December 6, 1960, it is ordered that judgment in the within action be entered for plaintiff against defendant, that defendant reinstate plaintiff as a member of said corporation and recognize his rights and privileges as such member, and that defendant pay the costs of this action.

## Exception

Now, December 6, 1960, defendant excepts to the above order and the exception is allowed.

---

[5] The pertinent bylaw reads:

"Section VI—A member may be expelled from membership—providing a written statement of the charges shall be filed with the secretary-treasurer who shall send a copy of said statement to the accused member by Registered Mail.

"The Secretary-Treasurer shall present the matter to the membership at the next regular meeting and upon the affirmative *ballot* vote of two thirds (2/3) of the members present and voting the accused shall automatically be expelled, his name stricken from the roll, and the Secretary-Treasurer shall notify him in writing of the action taken. If the affirmative ballot vote be less than two thirds (2/3) in number the action shall be automatically squashed.

"However, if expulsion be so effected, all rights and privileges of the expellee shall cease immediately in the same manner and full extent as stated under Section IV hereof."