## NORTHERN PAC. R. CO. v. CANNON et al.

(Circuit Court of Appeals, Ninth Circuit. January 23, 1893.)

### No. 52.

1. PUBLIC LANDS—NORTHERN PACIFIC GRANT—MINERAL LANDS.
    By Act July 2, 1864, (13 St. p. 365,) § 6, granting lands to the Northern Pacific Railroad Company, odd-numbered sections of agricultural land within the limits of the grant, which were not reserved, granted, or sold,

and were free from pre-emption or other claims, were withdrawn from sale, pre-emption, or entry when the general or preliminary route was fixed by the filing of its map in the general land office. Section 3 excluded mineral lands from the operation of the act. *Held,* that mineral lands were not withdrawn from sale at any time, if at all, prior to the definite fixing of the line of the railroad and the filing of a plat in the general land office.

2. SAME—PATENT—VALIDITY—EQUITY.
The Northern Pacific Railroad Company cannot maintain a suit in equity to quiet its title to certain lands within the limits of its grant, when patents have been issued to individuals for the lands as "mineral lands," before the line of road was definitely fixed.

3. SAME—APPLICATION FOR MINERAL PATENT—NOTICE.
As mineral lands are excluded from the grant, the railroad company is not entitled to any notice of an application for a mineral patent to lands lying within the boundaries of the grant, other than the general notice prescribed by Rev. St. § 2325, to all persons who may claim an interest in the land; except that, in case it initiates a contest under Rev. St. § 2325, to determine the character of the land, it is then entitled to personal notice of all subsequent proceedings; and, if it fail to initiate such contest, the question whether the lands are mineral or agricultural becomes a matter solely between the patentee and the government.

Appeal from the Circuit Court of the United States for the District of Montana.

In Equity. Suit by the Northern Pacific Railroad Company against Charles W. Cannon and others to quiet complainant's title to certain lands. A demurrer to the bill was sustained. 46 Fed. Rep. 237. Complainant appeals. Affirmed.

Fred M. Dudley, for appellant.

Edwin W. Toole, (Toole & Wallace, Massena Bullard, and McConnell & Clayberg, on the brief,) for appellees.

Before GILBERT, Circuit Judge, and ROSS and HAWLEY, District Judges.

HAWLEY, District Judge. This is an appeal from a decree of the circuit court of the district of Montana sustaining a demurrer to complainant's bill. The bill, after stating certain facts showing that the land in controversy, to wit, the N. W. ¼ of section 25, in township 10 N. of range 4 W. of principal meridian, Montana, had been granted to it under the act of July 2, 1864, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget sound, on the Pacific coast, by the northern route," (13 U. S. St. p. 365,) and that it had complied with the provisions of the act, and had the title to said land, if "not mineral" and "not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claim or rights," alleges, in substance, that in 1868 the United States surveyor general made return of his official plat of survey, and returned said land as agricultural, and not mineral, in character; that complainant's map showing the general route of its railroad was filed in the office of the secretary of the interior on the 21st day of February, 1872; that the line of its railroad was definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office on the 6th of July, 1882; that complainant is in the actual pos-

session of the whole of said land; that the defendants C. W., C. B., and Henry Cannon, intending and contriving to defraud complainant of said land, and wrongfully and fraudulently to acquire title thereto from the United States, on the 28th of August, 1878, applied to the local land office of the United States at Helena, Mont., to purchase said land "as mineral land," falsely and fraudulently claiming that said land was mineral land containing precious metals in such quantities as that it would pay to work the same as mineral land, and that the same was more valuable for mineral than agricultural or other purposes; that defendants well knew at that time that the land was not mineral land, but was agricultural; that defendants caused certain affidavits to be filed, and made proofs as to the amount of work by them performed upon said land, showing that they had complied with the mining laws of the United States and of the territory of Montana, for the purpose of imposing upon the officers of the land department of the United States; that said officers were thereby deceived as to the truth of the facts concerning the character of the land; that defendants, seeking to deceive complainant and conceal from it all knowledge of their fraudulent claim, did not serve upon complainant any notice of their fraudulent claim, and did not institute any contest whereby the true character of said land might be determined, and complainant had no knowledge of the proceedings taken by defendants in the land office until long after the making of said application by said defendants; that the register and receiver, being imposed upon and deceived by the fraudulent affidavits, on the 28th of August, 1878, wrongfully permitted the defendants to pay for said land, and executed and delivered to them a receipt for the purchase price of the same as placer mining claims, and on the 17th of August, 1879, the defendants, upon presenting said receipt, obtained from the land department of the United States a mineral patent, purporting to convey to them the said land; that said patent was issued negligently, wrongfully, and without authority of law, and was procured by the wrongful and fraudulent acts of the defendants; that said patent constitutes a cloud upon the title of complainant to said land; that said defendants have caused said lands to be surveyed into town lots as an addition to the city of Helena, and said city claims to have some title to a portion of said land; that complainant has no speedy or adequate remedy at law for its grievances; and it prays for a decree declaring that it has a full and perfect title to said land, that the patent to defendants be declared null and void, and that all of said defendants be enjoined and restrained from asserting any claim whatever to said land adverse to complainant.

Did the court err in sustaining a demurrer to this bill? Is complainant, by its own showing, entitled to any relief in this suit? In Railroad Co. v. Sanders, this court held that the act of July 2, 1864, granting lands to appellant in aid of the construction of its railroad, did not prevent persons from taking up and locating mining claims in the reserved lands at any time before the line of the railroad was definitely fixed, and that the fact that land not

mineral was so taken up, located, and claimed as mineral land prior to that time was of no avail to the railroad company claiming the same under its grant. The court, after discussing the questions involved at considerable length, and reviewing numerous authorities, said "that the land in controversy was, at the time the grant ceased to be a float, affected by something more than a mere pretended claim existing in the mind of an individual. It was for the time being actually segregated from the body of the public domain, by claims apparently genuine and lawful, appearing of record, and recognized by the officers of the government, and, as to the actual validity thereof, dependent only upon issues of fact to be thereafter determined by competent authorities. By an unbroken line of decisions of the supreme court from the case of Wilcox v. Jackson, 13 Pet. 498, to the case of St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 1, 11 Sup. Ct. Rep. 389, the title to land so affected does not pass by a grant of public land." 49 Fed. Rep. 129, 1 C. C. A. 192. It is conceded by appellant's counsel that the decision in that case, if sustained, is conclusive in favor of the ruling of the circuit court in this case. But he insists that it is the duty of this court "to review its conclusions, after fuller argument, and in the light of later authorities; of endeavoring to restate with greater clearness certain propositions which it is now evident were misunderstood by the court in the hearing in the Sanders case." That case speaks for itself, and furnishes ample evidence that no points therein discussed were misunderstood by the court. We decline to review or disturb that opinion. The case has been appealed to the supreme court of the United States. If there deemed to be erroneous, it will be reversed. If its conclusions are correct, it will be affirmed. The case now before us will, however, be considered with reference to its particular facts, and be determined upon the principles of law applicable thereto.

In this case a patent was issued by the government of the United States to defendants for the land in controversy as mineral land, prior to the time of the filing of the map of the definite location of appellant's railroad. Appellant claims to be seised of a fee simple to the land, and upon this ground bases its right to have defendants' patent set aside, and the cloud created thereby removed from its legal title. It denies that defendants have any title whatever, and claims that their patent was obtained by fraud, and is absolutely null and void. It is not a case where equitable relief is sought against a party holding the legal title. The sixth section of the act of July 2, 1864, withdrew the agricultural lands from sale, preemption, or entry of the odd-numbered sections granted to the railroad company which were not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, when the general or preliminary route of said railroad was fixed by the filing of its map in the office of the commissioner of the general land office February 21, 1872. Denny v. Dodson, 32 Fed. Rep. 909; U. S. v. Northern Pac. R. Co., 41 Fed. Rep. 847; Railroad Co. v. Barden, 46 Fed. Rep. 604; Railroad Co. v. Sanders, 49 Fed. Rep. 136, 1 C. C. A. 192; Buttz v. Railroad Co., 119 U. S. 72, 7 Sup. Ct. Rep.

100; St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 18, 11 Sup. Ct. Rep. 389. The mineral lands, however, were not withdrawn from sale at that time, or at any time, if at all, prior to the 6th of July, 1882, when the line of appellant's railroad was definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office. 13 U. S. St. p. 367, § 3.

How is the question to be determined whether the land, at the time the patent was issued to defendants, was mineral or agricultural land? We answer that it is, primarily at least, to be determined by the land department of the government. The statutes of the United States and the decisions of the courts so declare. The statute of the United States provides that—

"A patent for any land claimed and located for valuable deposits may be obtained in the following manner: Any person, association, or corporation authorized to locate a claim under this chapter, having claimed and located a piece of land for such purposes, who has or have complied with the terms of this chapter, may file in the proper land office an application for a patent, under oath, showing such compliance, together with a plat and field notes of the claim or claims in common, made by or under the direction of the United States surveyor general, showing accurately the boundaries of the claim or claims, which shall be distinctly marked by monuments on the ground, and shall post a copy of such plat, together with a notice of such application for a patent, in a conspicuous place on the land embraced in such plat, previous to the filing of the application for a patent, and shall file an affidavit of at least two persons that such notice has been duly posted, and shall file a copy of the notice in such land office, and shall thereupon be entitled to a patent for the land in the manner following: The register of the land office, upon the filing of such application, plat, field notes, notices, and affidavits, shall publish a notice that such application has been made, for the period of sixty days, in a newspaper to be by him designated as published nearest to such claim; and he shall also post such notice in his office for the same period. The claimant, at the time of filing this application, or at any time thereafter within the sixty days of publication, shall file with the register a certificate of the United States surveyor general that five hundred dollars' worth of labor has been expended or improvements made upon the claim by himself or grantors; that the plat is correct; with such further description by such reference to natural objects or permanent monuments as shall identify the claim, and furnish an accurate description, to be incorporated in the patent. At the expiration of the sixty days of publication the claimant shall file his affidavit showing that the plat and notice have been posted in a conspicuous place on the claim during such period of publication. If no adverse claim shall have been filed with the register and receiver of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter." Rev. St. U. S. § 2325.

This provision relates to lode claims. But the proceedings therein set forth, notwithstanding the differences between the rights of the lode and placer claimant, as to the quantity of land, the price per acre, conformity to public surveys, and other minor matters, applies to applications for a placer patent. Section 2329 provides that—

"Claims usually called 'placers,' including all forms of deposit, excepting veins of quartz or other rock in place, shall be subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims."

The only direct allegation in the bill tending to show that the defendants had failed to comply with the mining laws is as follows:

"That in truth and in fact the said defendants had not worked upon said premises in conformity with the mining laws of the United States or of Montana territory, or with the rules and customs of miners, or at all, and had not discovered upon said premises mines of any character whatsoever, or upon any part thereof, and had not expended the sum of five hundred dollars in labor or improvements upon said lands, or at all."

The other steps taken in conformity with the statute are alleged to have been fraudulently taken and performed for the purpose of deceiving and defrauding the government and appellant. This matter will be noticed hereafter.

Appellant claims that no notice was given personally to it. The law does not require any such notice to be given. The notice required by section 2325 is a general notice to all persons who might from any cause claim any interest in the land. Under section 2335, Rev. St. U. S., provision is made in case of a contest as to the land, whether agricultural or mineral, and, if appellant had desired to contest that question, it had the opportunity to do so, and, after initiating a contest, it would have been entitled to personal notice of all the proceedings thereafter taken, and to have participated therein, and offered such proofs as it might have been able to procure as to the character of the land. Not having initiated any such contest, it is not in a position to complain that it was not personally served with notice of the proceedings, and it is precluded from objecting to the issuance of the patent. Eureka Con. Min. Co. v. Richmond Min. Co., 4 Sawy. 302. The fact, as alleged in the bill, that appellant "had a claim thereto of record in the said United States district land office, * * * of which defendants had then and there full knowledge," is immaterial. Appellant's claim was for agricultural land included in the grant. The defendants' application was for mineral land excluded from the grant, and open to exploration, location, and purchase, independent of the grant. When appellant accepted the grant, and at all times thereafter, it knew that the mineral lands were excluded from its grant, and the law charged it with notice that mining locations and applications for patents might be made and patents obtained therefor by persons claiming the lands to be mineral. The government of the United States performed its duty to appellant when it provided a mode and a tribunal for determining the character of the land. Under the provisions of the statute we have quoted and referred to appellant was charged with knowledge of the notice which the mineral applicant was required to give by general publication and by the posting of notices upon the claim, and of the notices required to be given by the land department; and, having failed to file any contest against defendants' application, the question thereafter—as to the character of the land, whether mineral or not—became a matter between the defendants and the government of the United States. That question is one which required the exercise of judicial power and discretion upon the part of the officers of the land department, and their judgment thereon is not open to review in an action of the character made out

by appellant's bill. As illustrative of this principle, we here refer to the following authorities: French v. Fyan, 93 U. S. 169; Vance v. Burbank, 101 U. S. 514; Smelting Co. v. Kemp, 104 U. S. 636; Quinby v. Conlan, Id. 420; Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. Rep. 389; Gale v. Best, 78 Cal. 235, 20 Pac. Rep. 550; Aurora Hill Con. Min. Co. v. 85 Min. Co., 34 Fed. Rep. 519.

But appellant alleges in its bill that no mine was ever discovered by the defendants, and that they obtained the patent by a fraud committed upon the officers of the government; that the patent is void, and that the land belongs to it by virtue of the grant, it being agricultural land. The question as to whether a patent is void or voidable, and the extent of the power of the land department to pass upon and decide jurisdictional facts, have been frequently discussed and decided by the supreme court of the United States under a great variety of circumstances. The authorities upon this subject are to the effect that, if the officers of the government acted without authority of law, if the lands conveyed by the patent were never within their control, or had been withdrawn from their control before the patent issued, then their acts were void for want of power to issue the patent. Polk's Lessee v. Wendal, 9 Cranch, 87; New Orleans v. U. S., 10 Pet. 662, 730; Wilcox v. Jackson, 13 Pet. 498, 509; Stoddard v. Chambers, 2 How. 284, 317; Easton v. Salisbury, 21 How. 428; Reichart v. Felps, 6 Wall. 160; Best v. Polk, 18 Wall. 117; Leavenworth R. Co. v. U. S., 92 U. S. 733; Newhall v. Sanger, Id. 761; Sherman v. Buick, 93 U. S. 209; Smelting Co. v. Kemp, 104 U. S. 636; Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. Rep. 389; Railroad Co. v. Dunmeyer, 113 U. S. 629, 642, 5 Sup. Ct. Rep. 566; Reynolds v. Mining Co., 116 U. S. 687, 6 Sup. Ct. Rep. 601; Doolan v. Carr, 125 U. S. 624, 8 Sup. Ct. Rep. 1228; Railway Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. Rep. 112; St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 18, 11 Sup. Ct. Rep. 389. Most of these cases were in relation to agricultural lands. The supreme court of the state of Nevada, in Rose v. Mining Co., 17 Nev. 25,[1] held that a patent issued for a lode or vein claim at a time of a pending contest between the claimants in the state court to determine the right of possession to the identical lode for which the patent was issued was absolutely null and void, because it was issued without authority of law. This decision was affirmed in Mining Co. v. Rose, 114 U. S. 576, 5 Sup. Ct. Rep. 1055. In Lakin v. Dolly, 53 Fed. Rep. 333, the circuit court for the northern district of California decided that a patent issued for a mining lode or vein for more than 300 feet in width of surface ground was null and void as to the excess over 300 feet. Now, in these cases, as well as those in relation to agricultural lands, the fact was apparent by the provisions of the law that the officers of the government had no authority to issue any patent in the Richmond Case, and no patent exceeding 300 feet of surface ground in width in the Lakin Case. But the question at issue in this case is of a different character. Here the mineral lands within the odd sections of appellant's grant were excluded from the operation of

[1] 27 Pac. Rep. 1105.

the grant, and the officers of the government had authority under the law to issue a patent for such lands, and the patent cannot, therefore, be said to be void, although it may be voidable.

The patent issued to defendants is prima facie evidence that a discovery of mineral was made; that the land was properly located as mineral land; that the application for the patent, the notices given by the defendants, and all other steps required by the law, had been regularly taken; and is a deed of the assurance of the defendants' title. Mr. Justice Field, in Eureka Con. Min. Co. v. Richmond Min. Co., 4 Sawy. 319, said:

"A patent of the United States for land, whether agricultural or mineral, is something upon which its holder can rely for peace and security in his possessions. In its potency it is ironclad against all mere speculative inferences."

The fraud alleged in the bill was committed, if at all, upon the officers of the government of the United States, and the question can be determined in a controversy between the United States and the defendants, or the government could authorize a suit to be brought by any person having or claiming to have an interest to be affected thereby. A bill in equity to set aside a patent obtained by fraud or mistake can, ordinarily, only be maintained between the sovereignty making the grant and the grantee under the patent. Field v. Seabury, 19 How. 324; Hughes v. U. S., 4 Wall. 232; Mowry v. Whitney, 14 Wall. 434.

Mining Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. Rep. 765, is, in our opinion, the strongest case relied upon by appellant's counsel, as being in opposition to the views we have expressed. That case, however, was in reference to conflicting rights to a "placer" and a "lode" claim, and only involved the determination of the question as to how the fact of the existence of a vein or lode in a placer claim, as mentioned in section 2333, Rev. St. U. S., could be proven, and whether the provisions of sections 2325 and 2326 had any application with reference to that question. The patent under which the Iron Silver Mining Company claimed the land was issued to William Moyer on the 13th of November, 1878, for 56 acres of placer mining land. The patent under which Campbell claimed was issued for a vein or lode deposit which ran under the surface of the ground covered by the patent of the Iron Silver Mining Company. The supreme court held "that the circuit court, in refusing to consider the testimony found in the case in regard to the known existence of the vein of the Sierra Nevada claim at the time of the application for the Moyer patent, was in error;" and also "that it was erroneous to hold that, on the face of the patent for the Sierra Nevada mine, the existence of this vein and the knowledge of its existence were to be conclusively presumed in this action." Mr. Justice Brewer and the chief justice dissented. The court expressly distinguished the case in its facts from some of the previous decisions to which we have referred. In the course of the opinion of the court it is said:

"We are not ignorant of the many decisions by which it has been held that the rulings of the land officers in regard to the facts on which patents for land

are issued are decisive in actions at law, and that such patents can only be impeached in regard to those facts by a suit in chancery, brought to set the grant aside. But those are cases in which no prior patent had been issued for the same land, and where the party contesting the patent had no evidence of a superior legal title, but was compelled to rely on the equity growing out of frauds and mistakes in issuing the patent to his opponent."

Here is a plain recognition of the principle that, in a case like the one under consideration, the patent cannot be impeached except by a suit in equity, brought to annul the patent for fraud. But the strongest reason in support of the proposition that that case was not intended to conflict with those we have cited and referred to as applicable to this case is found by a reference therein to the case of French v. Fyan, 93 U. S. 169, which, it is said, "as shown· by a careful reading of it, is not in conflict with this decision." The same learned justice wrote both opinions.

In French v. Fyan, a patent to the land there in controversy had been issued by the United States to the state of Missouri, under an act of congress, in 1850, familiarly known as the "Swamp-Land Grant." Subsequently, in 1852, congress granted certain lands in said state to the Missouri Pacific Railroad Company. The land, in 1854, was certified to said railroad company· as part of the land granted by the act of 1852. The plaintiff, French, was vested with the title of the railroad company. The defendant held title under the swamp-land act of 1850. The question was whether, in an action at law, where the evidence of the respective titles came in conflict, parol evidence could be received to show that the land was never swamp land, and whether for that reason the patent issued to the state was void. With reference to that question, the court, after quoting with approval the doctrines announced in Johnson v. Towsley, 13 Wall. 72, that the action of the land department "in issuing a patent for any of the public land subject to sale by preemption or otherwise is conclusive of the legal title," said:

"We see nothing in the case before us to take it out of the operation of that rule; and we are of opinion that, in this action at law, it would be a departure from sound principle, and contrary to well-considered judgments in this court, and in others of high authority, to permit the validity of the patent to the state to be subjected to the test of the verdict of a jury on such oral testimony as might be brought before it. It would be substituting the jury, or the court sitting as a jury, for the tribunal which congress had provided to determine the question, and would be making a patent of the United States a cheap and unstable reliance as a title for lands which it purported to convey."

In Steel v. Refining Co., supra, Mr. Justice Field, in an elaborate and carefully prepared opinion, in which all the justices concurred, among other things, said that—

"Whenever mines are found in lands belonging to the United States, they may be worked, providing existing rights of others, from prior occupation, are not interfered with. · Whether there are rights thus interfered with which should preclude the location of the miner, and the issue of a patent to him or his successor in interest, is, when not subjected under the law of congress to the local tribunals, a matter properly cognizable by the land department, when application is made to it for a patent; and the inquiry thus presented must necessarily involve a consideration of the character of the land to which title is sought, whether it be mineral, for which a patent may issue, or agricultural, for which a patent should be withheld. * * * We

have so often had occasion to speak of the land department, the object of its creation, and the powers it possesses in the alienation by patent of portions of the public lands, that it creates an unpleasant surprise to find that counsel, in discussing the effect to be given to the action of that department, overlook our decisions on the subject. That department, as we have repeatedly said, was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable, except by direct proceedings for its annulment or limitation Such has been the uniform language of this court in repeated decisions. * * * Though the various matters of fraud, perjury, and subornation of perjury alleged as a defense are to be taken as true for the purpose of this decision, they are not to be taken as true for any other purpose. What we decide is that, if true, they are not available in this form of action, and that any relief against the patent founded upon them must be sought in another way, and by a direct proceeding."

The judgment of the circuit court is affirmed.

ROSS, District Judge, (concurring.) The bill in this case shows upon its face that the line of the Northern Pacific Railroad was not definitely located and a plat thereof filed in the office of the commissioner of the general land office until July 6, 1882. Until that time the grant to that company did not attach to any particular tract or tracts of land. Long before that date, according to the averments of the bill, the particular tract of land here in controversy was located by the defendants as mining ground, and under an application made by them on the 28th of August, 1872, to the proper local land office, they were, on the 28th of August, 1878, permitted to enter and pay for it under the laws of the United States relating to mineral lands, and subsequently, to wit, August 17, 1879, received from the government a patent purporting to convey to them the premises as such mineral land. The grant to the Northern Pacific Railroad Company in express terms excepted from its operation all mineral lands. 13 St. p. 365. It is true that the sixth section of the act made it the duty of the president to cause the lands to be surveyed for 40 miles in width on both sides of the entire line of the road "after the general route shall be fixed, and as fast as may be required by the construction of said railroad," and it was declared that the odd sections of land granted should "not be liable to sale or entry or pre-emption before or after they are surveyed, except by said company, as provided in this act." But there is in this provision no prohibition against the discovery by the officers of the land department of the government, or by anybody else, of the true character of the land embraced within the surveyed limits of 40 miles in width on both sides of the general route of the road. If, in making such surveys or otherwise, prior to the attaching of the grant to any particular lands, it be ascertained that any lands that would otherwise fall within the grant are mineral in character, it is obvious that they would not be embraced by the grant, for the reason that by its very terms mineral lands are excepted from it.

The bill in this case shows that many years prior to the attaching of the grant to any particular lands the tract in controversy was located as mining ground, was ascertained by the land department to be mineral in character, and was patented as such to the defendants under the laws of the United States relating to the disposal of mineral lands. True, the bill alleges that the evidence upon which those proceedings were had was false and fraudulent, and that the officers of the land department were thereby deceived as to the true character of the land. If so, the patent can be annulled at the suit of the government; but as long as the government is content to let its patent stand, by which it, in effect, solemnly declares that, after due investigation of the facts by the officers to whom under the law such investigation is committed, the land was, at and prior to the time when the grant to the railroad company became effective, mineral land, and subject to disposal under the laws relating to mineral lands, the company, which claims only under a grant which in terms excepts from its operation mineral lands, is not in a position to call in question the facts upon which the mineral patent is based. Those facts, including the question of the character of the land, which lay at the foundation of the proceedings, were open to contest in the land department on the part of any and every person claiming an adverse interest therein, and an opportunity to make such contest was afforded by the published notice required by the statute referred to in the principal opinion. For these reasons J agree that the judgment of the circuit court be affirmed.