## LOCAL NO. 7 OF BRICKLAYERS', MASONS' AND PLASTERERS' INTERNATIONAL UNION OF AMERICA et al. v. BOWEN et al.

(District Court, S. D. Texas, at Houston. January 11, 1922.)

No. 159.

1. **Courts ⟢328(4)—In class suits, aggregate interests, if sufficient, give federal courts jurisdiction.**

   Where a suit is a class or representative suit, the aggregate interests of the class, and not the several interests of individuals, constitute the matter in dispute, and, if sufficient in amount, gives the federal court jurisdiction.

2. **Courts ⟢328(3)—In injunction suits, value of right to be protected determines amount.**

   In injunction suits, it is not the sum recoverable for the injury sustained, but the value of the right to be protected, that determines the amount in controversy.

3. **Courts ⟢308—Though unions could not furnish diversity of citizenship, the individuals made parties could.**

   In a class suit for injunction by a local against a national trade union, in which the requisite diversity of citizenship existed between the individuals made parties, objection that the unions were not legal entities, and so could not furnish diversity of citizenship, was of no avail.

4. **Courts ⟢345—Attacking jurisdiction of federal court after voluntary answer not available.**

   In a suit for injunction by a local against a national trade union, where defendants have voluntarily answered, the jurisdiction of the federal court cannot be attacked on the ground that the case does not involve property, within the meaning of Judicial Code, § 57 (Comp. St. § 1039), so as to sustain venue of the federal court on the process issued.

5. **Trade unions ⟢4—Court relieves from executive board's unauthorized action in expelling member.**

   Where the attempted action of the executive board of a trade union in expelling a member was without official sanction, and its judgment and acts pursuant thereto are not the action of the union, parties aggrieved may apply to courts, without taking steps within the union for relief.

6. **Trade unions ⟢4—Judgment of suspension of members by executive board, acting in spirit of reprisal, held void.**

   While there is authority for the proposition that members of an executive board, who have been defamed, are disqualified by a direct interest in the subject-matter of the controversy to try the defamatory charge, and that their judgment in such a proceeding would be void, such proposition is not declared thus broadly here; but it is held that where

---

⟢For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the members of the board are involved in the inquiry, and it further appears that the inquiry was entered upon by the board in a spirit of reprisal, rather than judicial fairness, the judgment is void.

In Equity. Application for temporary injunction by Local No. 7 of the Bricklayers', Masons' and Plasterers' International Union of America and others against Wm. J. Bowen and others. Injunction allowed.

Thomas M. Kennerly and McDonald Meachum, both of Houston, Tex., for complainants.

Edward H. Bailey and Thomas H. Ball, both of Houston, Tex., for defendants.

HUTCHESON, District Judge. This is an application for a temporary injunction, filed by Local No. 7 of Texas of the Bricklayers', Masons' and Plasterers' International Union of America and Samuel E. Williams, for himself individually and as a member of said Local No. 7 of Texas of the Bricklayers', Masons' and Plasterers' International Union, consisting of individuals too numerous to mention by name, and Andrew S. McBride, Wm. A. Pudifin, Al De Dains, J. M. Hughes, W. D. Hayes, W. E. Sittler, W. L. Cowell, and Alf Pearson, each for himself individually and as members of said Local No. 7, against the Bricklayers', Masons' and Plasterers' International Union of America, and Wm. J. Bowen, Thos. R. Preece, and Wm. Dobson, president, first vice president, and secretary of the Bricklayers', Masons', and Plasterers' International Union of America, constituting the executive board of said union, and against them in their official capacities and as individuals, to restrain the said persons from putting into effect a sentence or judgment issued by the said executive board, suspending the complainants herein from membership in the Bricklayers', Masons' and Plasterers' International Union of America; the prayer also containing enlarged requests for relief, so as to obtain for the complainants full relief from the judgment complained of herein.

The temporary restraining order was issued without notice upon the grounds stated in the order, and the matter was set for hearing. The defendants answered to the bill and to the application for temporary injunction, and the matter having been set down for a day certain for the hearing on said application for temporary injunction, a hearing was had in chambers on the bill, answer, and affidavits.

The jurisdiction of this court to entertain the bill and prayer of complainants is opposed by the defendants on the ground (1) that this court is without jurisdiction in the cause for the want of the requisite jurisdictional amount; (2) for the want of proper parties plaintiff and proper parties defendant, since Local No. 7 and the International Union are not legal entities, and cannot sue and be sued as such, and, further, that the requisite diversity of citizenship does not exist, since the defendant International Union is not a legal entity, and has no such citizenship status as to furnish the requisite diversity of citizenship. I think it clear that none of the positions of the defendants in these matters is well taken.

[1] 1. As to the lack of jurisdictional amount, it is clear that complainants' suit is a class or representative suit, and it is well settled that

in such suits the aggregate interests of the whole class, and not the several interests of each individual, constitute the matter in dispute. Carpenter v. Knollwood (D. C.) 198 Fed. 298; Herbert v. Rainey (C. C.) 54 Fed. 252.

[2] Further, it is the settled rule that the amount in controversy in injunction suits is not the sum which the plaintiff might recover in a suit for the damage already sustained, but the amount or value of the right which the complainant seeks to protect from invasion, or of the object to be gained by the bill. Board of Trade of the City of Chicago v. Cella Commission Co., 145 Fed. 29, 76 C. C. A. 28; N., C. & St. L. Ry. v. McConnell (C. C.) 82 Fed. 65; 11 Cyc. 878; Railway v. Kuteman, 54 Fed. 552, 4 C. C. A. 503.

[3] Nor is there any greater merit in the contention that the suit must fail because of the want of the requisite diversity of citizenship, since, while it is true that the International Union as such has no such citizenship as would sustain jurisdiction, the members of the executive board have all been served and have duly answered, and their citizenship is sufficient to give this court jurisdiction.

[4] The defendants also attack the jurisdiction on the ground that the case does not involve property within the meaning of section 819 of Barnes' Federal Code (Comp. St. § 1039), so as to sustain the venue of this court on the process which was issued. If there was ever any merit in this contention, the same is no longer available to the defendants, since they have voluntarily answered in this cause, and it is therefore my opinion that this court has jurisdiction to entertain the bill and grant the complainants the relief prayed for, if upon the showing made on the hearing for temporary injunction they appear entitled to it.

[5] The defendants assert in limine that the bill is without equity, because it is apparent from the face of the bill, to which is attached the constitution and rules of order of the Bricklayers', Masons' and Plasterers' International Union of America, and the constitution, by-laws, and rules of order of Local No. 7, that this is a controversy between the members and constituent units of a voluntary association of persons, and that of such controversies courts generally will take no cognizance, allowing them to be settled in accordance with their own rules and agreements, and especially will courts not take cognizance thereof until after the parties to them have exhausted all of the remedies furnished by the rules of the association. They assert:

That the association is a voluntary one; that the plaintiffs, in applying for a charter in the International Union, all signed the following application and agreement:

"We, the undersigned, residents of Houston, Texas, believing the Bricklayers', Masons' and Plasterers' International Union to be well calculated to improve our intellectual and social condition and promote our industrial well-being and advancement, respectfully petition the Bricklayers', Masons' and Plasterers' International Union to grant us a charter to open a new union, to be located in the city of Houston, county of Harris, and state of Texas. We pledge ourselves individually and collectively to be governed by the constitution, rules and usages of the Bricklayers', Masons' and Plasterers' International Union."

That among the rules of said order it is provided that all judicial and executive authority of the International Union shall be vested in the

executive board; that provision is made in said rules for appeal from the acts of the executive board, and that it is further provided that no member shall commence or cause to be commenced, or aid any person, member, or local union in commencing any action against any local union or the International Union in any court of law or equity until all of the remedies provided by the constitution shall be exhausted, and providing in substance that any member so bringing such action shall subject himself to conviction and expulsion.

The record of what was done in the matters of which complaint is here made shows that upon the complaint of Charles L. Wilde against Subordinate Union No. 7 of the State of Texas, alleging in substance that said union had violated subdivision 3, section 8, article 5, which prohibits the sending out of circulars, etc., pertaining to the official acts of the local, or business affairs or laws of the International Union, and that said union had also violated section 5, article 15, of the constitution by receiving and countenancing an appeal for financial assistance, a referee was appointed under subdivision 4, section 8, article 5, a hearing was had as therein provided, and thereafter the executive board, after considering the report of the referee and the transcript of the hearing accompanying same, did enter the judgment of suspension complained of, and did thereafter proceed to create a new local, as provided in section 1, article 12; the judgment of suspension being as follows:

"The executive board of the Bricklayers', Masons' and Plasterers' International Union of America, duly convened in meeting this 10th day of October, 1921, began the hearing and consideration of the charges against Union No. 7 of Texas. The stenographer's minutes of the trial of said Union No. 7 of Texas were read, together with the findings of the referee, Brother George T. Thornton, thereon. After fully considering said charges and said evidence, the executive board approved the findings of the referee, and found and ordered as follows:

"In the matter of charges against Union No. 7 of Texas the executive board finds the defendant guilty as charged.

"On motion duly made and carried the following penalty was imposed by the executive board: That the aforesaid Union No. 7 be and it is hereby suspended as a subordinate union of the B. M. and P. I. U. of A., pending final action of the International Union in convention assembled.

"The executive board orders the secretary to notify and demand of said Union No. 7 of Texas to immediately surrender and turn over to the secretary of this International Union, the charter, seal, and all books, papers, and property of this International Union in its possession or under its control."

In due time, as required by the rules, the parties affected did lodge their appeal with the executive board, which appeal, instead of being referred to an executive officer, as required by subdivision 4, section 8, article 5, the same was by the executive board referred to the International Union at its next meeting in the state of Massachusetts in October, 1922.

I am strongly of the opinion that the field of judicial interference with the actions of voluntary, nonpublic bodies, as to controversies between their members as to the method and manner in which the rights of membership may be maintained and continued, is, and should be, a very narrow one, and that its boundaries should be maintained with the utmost care, so that only upon the clearest kind of showing, either that the Constitution and rules are violated by the decisions of the tribunals

set up by them, or that the remedies provided by the parties in their agreements for appeal from or the review of the decisions of their own constituted tribunals are nonexistent or unreasonable, should the courts permit their jurisdiction to be invoked, and it is in that spirit that I approach the inquiries:

(1) Is the matter complained of in this case one which has been conducted to judgment in accordance with the constitution and by-laws of the order? and, if so:

(2) Are the complainants, by the rules and constitution of the order, and the procedure extended to them under it, furnished an adequate appeal from that ruling, which they have not yet availed themselves of?

A negative answer to the first question will make an answer to the second question unnecessary, for, if the act of the executive board here complained of is void for want of authority or jurisdiction, the aggrieved parties may at once apply to the courts for relief, since such acts are in law viewed, not as the acts of the union itself, within the meaning of its rules and by-laws, but as the acts of the officers as individuals to whom the rules and by-laws of the union have no more application than if a stranger to the union was endeavoring, by force and violence, to interfere with these complainants in the enjoyment of the rights accorded to them as members of it, just as, though a suit may not be maintained against the state or its officers, when they are acting within the authority of a valid law, it is universally recognized that an injunction will lie against a state officer, when he is acting without warrant or authority of such law.

The principle here stated as to voluntary associations like this in suit is announced in People ex rel. Keefe v. Woman's Catholic Order of Foresters, 162 Ill. 78, 44 N. E. 401, where the court says:

"But the weight of authority seems to be in favor of the position that the obligation to take the appeal allowed by the laws of the society does not exist when the judgment is void for want of jurisdiction."

The answer to the first, as well as to the second, inquiry must be found in the constitution and rules of order of the International Union, as reviewed and adopted by the convention which met at Cleveland in October, 1920, which constitution was adopted after the decision of the Supreme Court of New York in the case of Bricklayers,' Plasterers' and Stone Masons' Union v. Wm. J. Bowen, reported in 183 N. Y. Supp. 855, presumably to supply the want of authority in the executive board then pointed out. It remains to determine if the 1920 amendment has accomplished this purpose. In that case it is said, of article 15 of the constitution of 1918:

"The constitution and rules governing the relations of these parties provide an elaborate and well-conceived scheme, called the code of procedure, for the trial of charges against members by members, against local unions by members, and against local unions by sister locals. These provisions do not, however, either in terms or by reasonable intendment, furnish a procedure for the investigation of charges by the International Union or its officers against a local, its officers, or members."

I agree with this construction of the constitution of 1918, and find that the constitution of 1920 has not undertaken to adapt that code of procedure to disciplinary trials by the executive board, but, on the con-

trary, the same article 15 is re-enacted with slight changes under the title "Code of Procedure for Subordinate Unions Only." The real effort to avoid the force of that opinion was made in article 5 of the constitution, by striking out section 9 of that article, and by amending section 8, which is entitled "Duties of the Executive Board," by changing subdivision 3 as already existing, and by adding an entirely new subdivision 4, which subdivision attempts to confer disciplinary authority on the executive board and provide for its exercise in all matters affecting breaches by locals, officers, etc., of the laws of the International Union, or its rules and orders, or the rules and orders of the executive board.

Subdivision 3 of section 8 of article 5 of the 1918 constitution briefly prohibited vilifying circulars, and circulars pertaining to the business affairs of the International Union or a subordinate union, and specifically provided the penalty therefor as follows:

"Every subordinate branch or member convicted of such violation shall be fined $100 and shall stand suspended without further notice until the fine is paid."

The same section of the constitution of 1920 added to the offense denounced by that section, "giving out of interviews for public consumption," and appealing for or accepting financial aid or assistance; but, unlike the 1918 constitution, it did not provide a penalty for so doing. It merely provided a suspension pending trial and determination of the offense, as provided for in the same section of the constitution.

Subdivision 4, as added in the 1920 constitution, provided for notice to the president or local affected of the charge, for answer, and for a hearing, either before the executive board or any member of it denominated by the president, or any member of the union appointed as referee by the president, the testimony to be taken by a stenographer and transcribed. If the hearing is before the executive board, an immediate decision shall be rendered and the penalty imposed. If before a referee, the executive board shall consider his report, and, if the accused is found guilty, shall impose a penalty. An appeal is provided, which is to be referred immediately to any officer of the International Union other than the executive board, who shall immediately review the same and render his decision thereon, which shall be final and binding, subject only to the action of the next convention. Subdivision 4 further provides in substance that the executive board shall have entire control over all judicial business of the International Union when not in session, and all questions relating to the laws of the International Union, or subordinate lodges; but said board shall in no case render a decision until both parties shall have had a full and complete opportunity to answer all charges made and refute all evidence submitted, and its decision shall be final, unless reversed by the International Union in convention assembled, and be respected and obeyed accordingly.

It will be seen that, while subdivision 3 provides for suspension pending trial, neither in this subdivision nor elsewhere in this section 8 is any penalty declared or fixed to be imposed after trial, and unless either other portions of the constitution declare the penalty here imposed, or

the board elsewhere in this constitution has authority to declare and fix, as well as to impose, the penalty conferred upon it, the judgment here complained of is void and without any force whatever, for it is fundamental that it is not enough for a statute to forbid the doing of an act; it must also provide the penalty to be assessed upon conviction.

The only other relevant portions of the constitution are article 1, declaring the general powers of the Union, and section 2 of article 17, entitled "Code of Crimes and Penalties." That neither of these support the judgment is at once apparent upon inspection. Article 1, section 3, provides as follows:

"The powers of this union shall be executive, legislative and judicial. The government and superintendence of subordinate unions shall be vested in this union as the supreme head of all unions in its jurisdiction."

Section 4 provides:

"All legislative powers shall be reserved to this union duly convened in session, and shall extend to any case of legislation not delegated to or reserved for subordinate unions."

Section 5:

"All the executive and judiciary powers of this union, when not in session, shall be vested in the executive officers, the president, first vice president, and secretary."

Section 2 of article 17, contains a list of crimes, and fixes penalties therefor; but in this list there is no reference to the matters made the occasion for the judgment which is the subject of complaint here.

It follows, then, that the attempted action of the executive board is without official sanction, or color of sanction; that their judgment, and the acts done under the authority of and pursuant to that judgment, are not the acts of the union, and must be held to be the acts of intermeddlers and void; and that complainants, as citizens of a great Republic, which affords the protection of its courts against arbitrary and despotic actions to those entitled to it, whether rich or poor, union or nonunion, may therefore now apply to the court for relief against the wrongs and aggressions which they have suffered, from the illegal action of the defendants, without being obligated to take any steps within the union to relieve themselves from these undoubted wrongs.

In this view it is perhaps unnecessary to at all discuss the second question, whether the complainants have been afforded an adequate appeal; but it may not be amiss to say that I think it equally clear that the reference by the executive board of the appeal of complainants to the International Union was equally unlawful and without authority, and that by denying to the complainants the immediate relief which the constitution afforded them of a trial before an executive officer, the executive board has prevented them from exhausting their rights within the association, if in law they should have first exhausted them, and cannot now be heard to say that complainants' suit here is premature. It is as plain as language can make it that, as far as disciplinary matters are concerned, no direct appeal was provided to the convention, but that, since all powers were vested in the union in convention assembled, it was expected, not by way of appeal, but by way of general visitation,

the International Union would supervise and correct, if necessary, any acts of the executive board of a disciplinary character performed during adjournment, and, in order to give a speedy right of trial, the ten days' appeal to an executive officer was provided.

[6] There is another aspect of this case which is sufficient to support the view here announced that the judgment of the executive board is a nullity—the want of judicial fairness which characterized these whole proceedings. It is a fundamental principle that no judicial or quasi judicial hearing is valid, where the maxim "audi alteram partem" is ignored, and it is therefore of the essence of a valid judgment that the body which pronounces it shall be unbiased, shall have no interest whatever in the outcome of the issue, and shall not have in any manner prejudged or predetermined it.

There is authority for the position that the very nature of this controversy, involving as it did a proceeding to discipline complainants on account of protests made by them against the salaries of the executive board, a criticism of their conduct, and a movement to secure a referendum election, by which new officers could be elected, rendered the executive board disqualified, as a matter of law, to sit in judgment, and made their judgment a nullity, for, as was said in the case of Bricklayers', Plasterers' and Stone Masons' Union v. Bowen et al., 183 N. Y. Supp. 855:

"The law insures to every member of such an association a fair trial, not only in accordance with the constitution and by-laws of the association, but also with the demands of fair play, which, in the final analysis, is the spirit of the law of the land."

In Wilcox v. Royal Arcanum, 210 N. Y. 370, 104 N. E. 624, 52 L. R. A. (N. S.) 806, in which Wilcox was tried and expelled by the executive officers for having issued defamatory circulars regarding them, the court held the judgment void, and said:

"It is shocking to one's sense of fair play that the persons defamed should. be selected to try the defamatory charge, and it is sufficient for the purposes of this case to hold that they are disqualified by a direct interest in the subject-matter of the controversy."

It is not necessary, however, for me to announce the doctrine thus broadly, because it is apparent, from the facts in this case, that the cause of complainants here, defendants in the proceeding in the matter of the complaint of Charles L. Wilde v. Subordinate Union No. 7, was prejudiced against them, and that the inquiry was entered upon by the board in a spirit of reprisal, rather than one of judicial fairness, as appears from the following portions of the letter of William Dobson, secretary of the executive board, and one of the judges who pronounced the judgment complained of here. This letter is attached to and made a part of the affidavit of William Devine, filed in this cause by the complainants:

"Our laws that we made at the Cleveland convention make it somewhat slow for us, but you can rest assured, Brother Devine, that in the end No. 7 will be fully dealt with."

And the concluding paragraph:

"With best wishes, and assuring you that it is the intention of the executive board to deal out the letter of the law to these men, who are introducing disruptive things within our institution, and that there will be no let-up on our part until this has been fully accomplished, in so far as their membership and their association with us is concerned."

The judgment and the proceedings of the executive board in the matter of the complaint of Charles L. Wilde against Subordinate Union No. 7 of the Bricklayers', Masons' and Plasterers' International Union being, for the reasons heretofore stated, of no effect, it follows that their action in attempting to institute a new local is also void, and without force and effect, and complainants may have a temporary injunction protecting them in their rights secured to them under the constitution and laws of the order, just as though the complaint of Charles L. Wilde against Local No. 7 had never been filed or determined.