## In re OSTERLOH.

District Court, S. D. Texas, at Houston.
August 9, 1929.

No. 1197.

Clarence Miller, of Houston, Tex., for petitioner.

HUTCHESON, District Judge. Hannah Osterloh, who entered at Galveston, Tex., about four years ago, after due inspection and in the regular manner, as an immigrant from Germany, held under a warrant of deportation, brings this petition. She came in as a domestic servant for M. Rochow. In the fall of 1928, through an illicit affair, she became pregnant, and for this reason her employer forced her to leave his home, making arrangements for her to be taken care of at a rescue home. Since her trouble she has had no assistance and no maintenance from Rochow, and the present proceedings were brought against her while an inmate of the Gulf Coast Home, a charitable institution; that institution having reported her as a public charge to the immigration authorities.

On May 29, 1929, without previous notice, she was under a warrant taken to the United States immigration office at Houston, Tex., for a hearing. She did not go voluntarily, but only upon the compulsion of the warrant. On that same day her hearing was had; the same inspector, George F. Elsenbroich, acting as prosecutor, inquisitor, examiner, interpreter, and preliminary magistrate.

There was no evidence offered on the hearing, except her statements adduced in the course of the inquisition, and two ex parte certificates of doctors, given nearly four years after the entry of the alien, which certificates were not submitted to the alien; neither was she advised of them nor given opportunity to rebut them. Neither of these certificates, however, states that she was mentally deficient at the time of her entry, nor do they state that by reason thereof she was or was likely to become a public charge; nor are they in form and substance sufficient to support the warrant. U. S. ex rel. Haft v. Tod (United States ex rel. Brugnoli v. Tod) (C. C. A.) 300 F. 918; United States ex rel. Mandel v. Day (D. C.) 19 F. (2d) 520.

Two charges were specified in the warrant as grounds for deportation: (1) That when she entered the United States she was likely to have become a public charge; (2) that she was mentally deficient when she entered the United States. During the hearing other charges developed, as follows: (3) That her passage had been paid for by another; (4) that she had entered the United States under contract to work for another, and that since her entry she has become a public charge, due to her mental deficiency at the time of her entry.

At the conclusion of the hearing the officer found the petitioner deportable and recommended her deportation upon all the grounds, and the Assistant Secretary of Labor issued the warrant, reciting that it was based upon due hearing. While it is true that the alien was advised that she had a right to be represented by a lawyer, it occurred in this way. After reading the warrant the inquisitor said:

"Q. Do you understand the warrant charges and the nature of these proceedings as explained to you? A. Yes.

"Q. You are advised that it is your right to be represented at this hearing by a lawyer. Do you wish to secure an attorney to represent you in this case? A. I do not know; I have no money to provide an attorney.

"Q. Are you ready and willing to proceed with this hearing without the presence of an attorney? A. Yes."

Thereafter the hearing proceeded, the witness answering readily and intelligently many questions, and on one of those occasions, to the query, "Do you understand this charge, and have you any reason to offer why it should not be urged against you?" the witness pathetically answered, "I understand the charge, but I am looking to you that I receive a fair and impartial hearing." At no time were the proceedings stopped to give the petitioner a chance to collect her wits, or furnish testimony, or rebut charges. She was not advised of her right to appeal, but with fell and determined haste the hearing proceeded to the apparently foredetermined conclusion.

Here is a case of a hearing conducted, not in a manner and for the purpose of de-

224

veloping the real facts, but in a manner and for the purpose of substantiating a predetermined conclusion. Such a hearing is not valid, for "it is a fundamental principle that no judicial or quasi-judicial hearing is valid, where the maxim 'audi alteram partem' is ignored, and it is therefore of the essence of a valid judgment that the body which pronounces it shall be unbiased, shall have no interest whatever in the outcome of the issue, and shall not have in any manner prejudged or predetermined it." Local No. 7 v. Bowen et al. (D. C.) 278 F. 271, 278.

In the colloquy over the forthcoming trial of Rebecca, Sir Walter Scott makes the parties to it say, "I ordered the hall for his judgment seat." "What," said Bois Guilbert, "so soon?" "Aye," replied the preceptor, "the trial moves rapidly on when the judge has determined the sentence beforehand."

Upon the plainest principles then of universal justice, no fair hearing has occurred here; rather has the hearing been stripped of the conditions which make for justice. If the charges presented against this young woman, a stranger in a strange, though adopted, land, speaking English imperfectly, and relying upon one man as inquisitor, interpreter, prosecutor, and judge, had not involved charges of her mental deficiency, the fell expedition of the proceedings would invalidate the findings; but, when it is considered that the charge brought and claimed to have been established by the inquisitor was that of *mental deficiency,* the gross unfairness of the hearing becomes more clear.

Conceding to the inspector, as of course is the case, a desire to do his duty, it must be held that the spirit and motive animating the hearing was not that characteristic of a fair proceedings to determine the facts, but of one instituted and conducted to furnish formal support to a preconceived opinion that the alien must go, and that, when such a spirit appears, no hearing can be called fair where it is entirely in the hands of one man as interpreter, inquisitor, prosecutor, and judge, and the alien, a young woman charged with mental incompetency, has neither counsel nor friends at hand.

No matter, then, what the evidence developed, I should grant the writ and discharge petitioner for want of fairness in its development. But, conceding full fairness to the hearing, it is plainly apparent from the record that no evidence was adduced which would justify or support the findings.

It is therefore the opinion of the court that petitioner should be discharged from custody, and that, unless and until the immigration authorities obtain and are ready to present in a fair and impartial way, to a fair and impartial tribunal to try the facts, evidence legally sufficient to maintain the charges, petitioner should not be again molested or restrained of her liberty.

Let a decree discharging the petitioner be drawn and presented.