RIVERSIDE LODGE NO. 164 et al. v. AMALGAMATED ASS'N OF IRON, STEEL AND TIN WORKERS OF NORTH AMERICA et al.

No. 3068.

District Court, W. D. Pennsylvania.

June 6, 1935.

Aaron Sapiro, of New York City, and Schullman & Harter, of Pittsburgh, Pa., for plaintiffs.

David M. Harrison, of Pittsburgh, Pa., for defendants.

McVICAR, District Judge.

The Amalgamated Association of Iron, Steel and Tin Workers of North America is an unincorporated association with its principal office located in the city of Pittsburgh. The purpose of the organization is to promote the interest of its members in the matter of prices for their labor, working hours, and working conditions. The organization has general officers thereof and what is designated an "International Executive Board." It operates largely through subordinate lodges located in many places in different states. Riverside Lodge No. 164 is one of the subordinate lodges. The association has a constitution and general laws which define the rights and duties of the officers, of sublodges, and the members of the association. The organization is supported by dues which are collected by the sublodges and payments therefrom are made to the Amalgamated Association.

On December 30, 1934, a district conference was held at the office of the association in Pittsburgh, at which were present six members of the International Executive Board. At this meeting a resolution was adopted calling for a meeting of workers February 3, 1935, at Pittsburgh. January 17, 1935, the International Executive Board sent a letter to plaintiff lodge advising said lodge of the duties of the elected officers of the defendant association and advising the plaintiff lodge that said officers or the executive board had not called or sanctioned the meeting called for February 3, 1935. January 29, 1935, the International Executive Board sent another letter to plaintiff lodge forbidding the holding of the conference or meeting fixed for February 3, 1935, and warning plaintiff lodge therein, to send delegates would be a violation of its charter rights, a violation of the ritual obligations and the constitution and general laws of the association, and that it would be an act of insubordination punishable by revocation of charter. February 2, 1935, the president of the defendant association sent to the corresponding secretary of the plaintiff lodge a telegram stating that he had been informed that the plaintiff lodge had voted to defy the order of the International Executive Board by sending representatives to the meeting to be held February 3, 1935, and further that if such action was carried out by the plaintiff lodge that it must surrender its charter. February 3, 1935, a meeting was held as provided for in the resolution adopted December 30, 1934. There is no competent evidence as to what was done at said meeting, nor is there competent evidence as to who was present at said meeting, except that it

was a meeting of steel workers and that representatives of the Riverside Lodge were present and took part in said meeting.

February 5, 1935, the International Executive Board had a meeting, which was called by its president. At such meeting a motion was passed expelling the plaintiff lodge and other lodges, which were alleged to have had representatives at the meeting of February 3d. The plaintiff lodge did not have any notice of the meeting of the board on February 5, 1935, or any notice that said board was going to have a hearing or trial on the matter of revocation of the charter of the plaintiff lodge, nor did the plaintiff lodge have any opportunity to be present by representatives, or by counsel, at said meeting. The International Executive Board at its meeting of February 5, 1935, acted wholly on hearsay evidence, evidence procured through the public press and from a labor leader who was not present at the meeting of February 3d. This hearsay evidence was to the effect that reds and communists were present at the meeting of February 3d and took some part therein. On February 5, 1935, the International Executive Board notified the plaintiff lodge of its expulsion. It also demanded that its charter, seal, books, money, and other property be sent to the defendant association.

At the International Convention of the defendant association in April, 1935, at Pittsburgh, the action of the International Executive Board in expelling plaintiff lodge and other lodges, which were alleged to have participated in the meeting of February 3d, was approved. The delegates elected from the plaintiff lodge and from other subordinate lodges, which were expelled, were refused admission to said convention and consequently did not have an opportunity to be heard by way of appeal or otherwise.

The plaintiffs in this case, which includes the Riverside Lodge aforesaid, and some of its officers and trustees, filed its bill in this case setting forth the above facts and praying, inter alia, that the action of the International Executive Board expelling the plaintiff lodge and declaring a forfeiture of its property be declared illegal and void, and that plaintiff lodge be reinstated as a subordinate lodge of the defendant association. Defendant filed its answer thereto, which contained a counterclaim in which the defendant as-

sociation prayed for an accounting and also for a decree requiring plaintiffs to surrender, and deliver the charter of the plaintiff lodge, its seal, books, money, and other property.

█ Labor organizations have the power to make laws not inconsistent with the laws of the land. Mattey v. Mashock, 25 Schuylkill Leg.Rec.(Pa.) 351. Members of subordinate lodges are bound by the laws of the organization. Commonwealth v. Union League, 135 Pa. 301, 324, 19 A. 1030, 8 L.R.A. 195, 20 Am.St.Rep. 870; Loyal Orange Institution v. Morrison, 269 Pa. 564, 567, 112 A. 862. The power to make laws by such associations includes the power to make laws for the expulsion of members and sublodges. People ex rel. Schults v. Love et al., 199 App.Div. 815, 192 N.Y.S. 354; Mattey v. Mashock, 25 Schuylkill Leg.Rec.(Pa.) 351, supra. The laws of such associations may provide for the creation of tribunals for the trial of offenses. Fish v. Huddell, 60 App.D.C. 263, 51 F.(2d) 319. The decisions of such tribunals when within the power conferred, and when exercised in accordance with the laws of such association, are final and conclusive. Fish v. Huddell, 60 App.D.C. 263, 51 F.(2d) 319, supra; People ex rel. Schults v. Love, 199 App.Div. 815, 192 N.Y.S. 354, supra; Crow v. Capital City Council, 26 Pa.Super. 411, 422; Simpson v. Grand International Brotherhood of Locomotive Engineers, 83 W.Va. 355, 98 S.E. 580. Unless the laws of the association provide otherwise, the member, or sublodge, charged with an offense must be given a hearing, be notified thereof, and afforded an opportunity to be heard. Morrison v. Ingles et al., 2 Western Weekly Reports, 50; British Columbia Telephone Co. v. International Brotherhood, 29 B.C. 289; Hatch v. Grand Lodge, 233 Ill.App. 495; Local No. 7 of Bricklayers' Union v. Bowen, 278 F. 271 (D.C.S.D.Texas); Bricklayers' Union v. Bowen (Sup.) 183 N.Y.S. 855, affirmed without opinion 198 App.Div. 967, 189 N.Y.S. 938. Courts have jurisdiction to restrain an unlawful expulsion of a member or a sublodge, or to reinstate a member or a sublodge unlawfully expelled. Mattey v. Mashock, 25 Schuylkill Leg.Rec. (Pa.) 351, supra; British Columbia Telephone Co. v. International Brotherhood, 29 B.C. 289, supra; Morrison v. Ingles et al., 2 Western Weekly Reports, 50, supra; Local No. 7 of Bricklayers' Union v. Bow-

876

en, 278 F. 271 (D.C.S.D.Texas). Property rights are involved under the issues raised by the bill and the answer thereto, and the counterclaim of defendant, and the answer thereto. The title to the books, seal, papers, money, and other property now in possession of the Riverside Lodge is involved. This is in addition to what other rights plaintiff lodge may have in the property of the defendant association and the right to bargain for the labor of the members thereof. See Gardner v. Newbert, 74 Ind.App. 183, 128 N.E. 704; Barbrick v. Huddell, 245 Mass. 428, 139 N.E. 629; Local No. 7 of Bricklayers', Masons' and Plasterers' International Union of America et al. v. Bowen et al. (D.C.) 278 F. 271, supra.

█ The principal question in this case is whether the expulsion of the plaintiff lodge by the International Executive Board was lawful or not. The plaintiff lodge was expelled on the ground that it sent representatives to the meeting of February 3, 1935, in violation of the orders of the International Executive Board. The International Executive Board in its notice to the plaintiff lodge of its expulsion relied upon sections 12 and 108 of the constitution and general laws of the defendant association as authority for the expulsion. Section 12, after stating who shall constitute the executive board, states that they "shall have jurisdiction over all matters and subjects not clearly defined by law." In my judgment the language employed in this section is not sufficient to authorize the expulsion of a subordinate lodge. Such a remedy is drastic and, therefore, should be clearly stated if such power was intended to be granted. Section 15 grants express power to the International Executive Board to revoke charters where specified conditions exist. Section 74 provides that "no subordinate lodge shall be expelled or suspended, or deprived of any of the rights or privileges except as provided in this Constitution." Sections 75 to 79, inclusive, provide a tribunal for the trial of charges and authorize the imposition of penalties, and also authorize limited powers as to forfeiture of charters. It is fair to assume that if the power to expel a sublodge was intended to be granted in section 12 the power would have been clearly expressed therein. If the board had such a power under this section, it would have been necessary for it to hold a hearing or trial, to give notice to plain-

tiff lodge thereof, and to have afforded to plaintiff sublodge an opportunity to be heard. Section 108, relied upon by the International Executive Board as authority to expel in this case, applies only to members and has no application to subordinate lodges. I am of the opinion that sections 12 and 108, relied upon by the International Executive Board for the power of expulsion in this case, do not authorize or justify the action taken by the Board.

█ At the trial defendant association contended that it had the power to expel the plaintiff lodge under section 15 of the constitution and general laws. It is sufficient to state, however, that the plaintiff lodge was not charged with a violation of section 15, nor was it expelled because it violated section 15. The pertinent parts of section 15 have been quoted in No. 20 of the findings of fact.

Sections 75 to 79, inclusive, of the constitution and general laws are under the caption of "Sub-Lodge Trials." These sections, which are quoted in No. 19 of the findings of fact, provide for charges against subordinate lodges which violate any "of the laws, rules and regulations of this Association." They provide for a notice to the sublodge in which shall be stated a full copy of the charges preferred against it in writing; they provide that the sublodge may produce testimony and be represented by counsel; they provide that the board of investigation may inflict such penalty for violation of laws, as they deem expedient, and if any lodge refuses to pay the penalty inflicted upon it, its charter shall at once be forfeited and to remain so forfeited until the meeting of the International Convention. That if the International Convention reverses the decision the charter shall be returned. These sections apparently were intended to cover all violations of the laws, rules, and regulations of the association other than those specifically mentioned. It would seem to follow that if the plaintiff lodge was guilty of violating any law, rule, or regulation of the defendant association, trial should have been held before the tribunal and in the method prescribed by the laws.

At the meeting of the International Executive Board February 5, 1935, the president held that the aforesaid sections did not apply to the facts in this case, but the president's power to determine constitu-

tional questions is limited by section 70, which provides that: "All questions referred to the President of the International Lodge, as set forth in Section 68, shall be in writing, giving full details of the case." It was admitted that no such question was submitted to the president in writing; therefore, he was without authority to make the ruling aforesaid.

I conclude that for the reasons given the International Executive Board did not have the power to expel the plaintiff lodge under sections 12, 108, and 15; that the power to expel, if any, was by virtue of the powers contained in sections 75 to 79, inclusive, and as the plaintiff lodge was not served with notice, or afforded the right to offer evidence, or to be represented by counsel, that the proceedings to expel under these sections are illegal; also, that under section 12 a notice of hearing would have been required if the board had power to exercise a power of expulsion thereunder.

The action of the International Convention in approving the action of the International Executive Board in expelling plaintiff and other lodges was not valid for the reason that the plaintiff lodge, as well as other expelled lodges, were not permitted to be represented or to be heard at said convention and, therefore, the plaintiff lodge was denied the fundamental requirement of notice and the opportunity to be heard. It was seriously contended by defendants that the action of the International Executive Board was taken in good faith and that said board did what it believed to be best in order to preserve the life of the defendant association, but it must be remembered that good faith cannot be used as a substitute for authority, or for the exercise of authority in a manner not provided for by law. As stated by our Supreme Court in Panama Refining Co. v. Ryan, 293 U.S. 388, 420, 55 S.Ct. 241, 248, 79 L.Ed. 446: "The point is not one of motives, but of constitutional authority, for which the best of motives is not a substitute."

It was contended by plaintiffs that the charter granted by the defendant association to the Valley Lodge should be revoked. Section 15 of the Constitution and general laws provides: "Any body composed of at least ten practical workmen as provided in Section 1, who are of good character and are eligible to membership

in this Association * * * shall be entitled to a charter of the same." I do not find any other law of the defendant association, nor has such been pointed out to me, regarding the creation of subordinate lodges. The constitution and general laws, therefore, are not violated by the creation of Valley Lodge. If they are violated there does not seem to be any remedy provided for by the association's laws. However, no decree could be made affecting Valley Lodge without making it a party and it is not a party, either by itself or by representatives in this case.

I conclude that the order of expulsion made by the International Executive Board February 5, 1935, is illegal and void, and that the plaintiff lodge is entitled to be reinstated as a subordinate lodge of the defendant association as of the date of its expulsion.

Let a decree be prepared in accordance with the foregoing findings of fact, conclusions of law, and this opinion.