ROCHESTER TUMBLER WORKS *vs.* MITCHELL WOODBURY COMPANY.

Suffolk.    December 13, 1912. — June 16, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Release. Contract,* In writing.  *Receiver.  Practice, Civil,* Parties, Waiver at argument.  *Waiver.*

In an action of contract for a sum of money alleged to be due to the plaintiff, where the sole defense relied upon is a release in writing given by the plaintiff to the defendant and alleged by the defendant to include the plaintiff's present claim, if there is no ambiguity in the terms of the instrument, evidence of what was said in the negotiations that resulted in the execution and delivery of the release, although admitted without objection, cannot be considered in interpreting its meaning, and whether the defendant asked for a "full release" and the plaintiff agreed to give such a release is of no consequence.

A release, executed and delivered by the receiver of the property of certain corporations to a person who owes the price of goods sold to him by such corporations and also owes the price of other goods sold to him by the receiver after his appointment, by which instrument the receiver agrees to discharge the debtor "from any further obligations or accounts due to the above named companies," does not discharge the debtor from his obligation to pay for the goods purchased by him from the receiver.

The receiver of the property of a corporation in suing for the price of goods sold by him as receiver must sue in his own name as such receiver; and, if he brings an action for the price of such goods in the name of the corporation by him as receiver, he is not entitled to recover, unless the defense that the action is brought by the wrong party is waived, as it was in the present case.

At the argument of exceptions in an action for the price of goods sold by the receivers of the property of a corporation, which was brought improperly in the name of the corporation by them as receivers, when it should have been brought by the receivers in their own names, if the defendant states in his brief that "there is no dispute as to the prices charged or as to the receipt of the goods by the defendant" and that "the sole defense was that the plaintiffs' claim had been discharged by an instrument in writing," this is a waiver of any objection to the form of the writ and of the defense that the action was brought by the wrong party.

LORING, J.    The defendant bought of one Thompson, receiver of the Rochester Tumbler Works, three lots of merchandise, and later bought, of Thompson and a co-receiver subsequently appointed, a fourth lot.  This action was brought to recover the price of the four lots, amounting to $214.35.  The four lots were bought in March and April, 1908.  At the trial the defendant

admitted that it bought the goods but insisted that a release to the defendant executed by the receivers on February 17, 1910, covered the purchases here in question.

The following facts in connection with the release were put in evidence without objection, and on those facts, taken in connection with the release itself, the presiding judge* left it to the jury to find whether the sales here in question were included in the release.

The facts referred to were these: Thompson was appointed receiver of the Rochester Company on December 7, of the Riverside Company on December 10, and of the Crystal Glass Company and the Ohio Flint Glass Company on December 17, 1907. Before the receiverships these four companies had sold merchandise to the defendant which, with interest to February 16, 1910, amounted to $4,277.51. The defendant had refused to pay the receivers this sum on the ground that it was entitled to a rebate, and four actions had been brought in the Superior Court to collect these amounts. At first the receivers refused to allow the rebate insisted upon by the defendant, but later they changed their position on this point, and in February, 1910, they came to Boston, called upon the president of the defendant company, and presented to him a written statement (which afterwards was annexed to the release subsequently made), in which the details making up the $4,277.51 were stated and, in addition, the details of the rebate amounting to $1,971.33, which they were then ready to concede. This made the net amount due from the defendant $2,306.17. The receivers presented this statement to the president of the defendant company. He left the room and on his return said that he accepted their figures, and thereupon one of the receivers dictated the agreement of compromise, the material part of which is hereinafter set forth, to which a copy of the statement mentioned above was annexed. This was executed in duplicate the next day, and later the $2,306.17 was paid by the defendant to the receivers.

The president of the defendant company testified that when he left the room he took to his bookkeeper the receivers' statement or the amount shown by the statement to be due from

---

* *Hitchcock*, J.

the defendant company, and finding that it was less than the amount which the books of his own company showed to be due he accepted the receivers' figures without verifying the accuracy of their computation. On cross-examination he testified that at first the purchases made by him from the receiver were put into the account of purchases made by him from the companies, because "the bookkeepers did not understand," while later a new account was opened on the defendant company's books of the purchases made by it from the receivers. He further testified that the first of these two accounts included the four purchases made by the defendant company from the receivers as well as the purchases made by the defendant company from the several companies before the receiverships. The president further testified that at the interview on February 16, 1910, he told the receivers that he "would take their settlement if they would give me a full release, which they agreed to do." Both receivers testified that a full release was not granted, asked for or spoken of at this interview. It was testified to at the trial without contradiction that there was no rebate on sales made by the receivers. It did not appear that any rebate on receivers' sales had been claimed at any time.

On September 10, 1910, Thompson wrote to the defendant stating that the three parcels of merchandise bought by the defendant of him as receiver in March and April, 1908, had been overlooked, and asking it to pay for them. A similar letter was written on the same day by the two receivers with respect to the fourth lot of merchandise bought by the defendant of the two receivers in April, 1908. The defendant answered that it had a receipt in full from the receivers and refused to pay; whereupon this action was brought.

The defendant asked for the following rulings :

"1. That on all the evidence the verdict must be for the defendant: 2. A claim for goods sold by the receivers to the defendant would be a claim of the plaintiff company and would be an account due the plaintiff company: 3. A claim or account for the goods sold the defendant was a claim or account due the Rochester Tumbler Works and not due the receivers." These were refused and exceptions were taken. The defendant took a further exception to that part of the charge in which the pre-

siding judge told the jury that the burden was on the defendant to prove that the claim here sued on was covered by the release. The plaintiff had a verdict, and the case is here on these exceptions.

The settlement made between the receivers and the defendant company on February 17, 1910, was in writing. Being in writing the question whether it did or did not release the defendant from the debt due to the receivers for the four purchases made by it from them depends upon the terms of the written agreement. If the terms of the agreement had been ambiguous, the circumstances under which it was made would have been admissible to ascertain its true meaning. *Whidden & Co.* v. *Jordan, ante,* 189; while no recourse to outside facts was necessary or admissible to ascertain its meaning if its terms were not capable of more than one construction. In either event evidence of what was said in the course of the negotiations which led up to the making of the settlement made in writing was inadmissible to add to, vary or contradict it. And this is true even if (as was the case here) that evidence is admitted without objection. *Mears* v. *Smith,* 199 Mass. 319. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122. *Fairfield* v. *Lowry,* 207 Mass. 352, 358. Whether the president of the defendant company did or did not ask for a "full release" was incompetent and of no consequence.

The written agreement here in question recites that "a settlement having been reached between the trustees or receivers" of the four companies (the Crystal Glass Company, the Riverside Glass Company, the Ohio Flint Glass Company and the Rochester Tumbler Works) and the defendant company, whereby the defendant company is to pay the receivers $2,306.17 and costs incurred by it, and the receivers are to pay their own costs "and are to discharge said Mitchell Woodbury Co. from any further obligations or accounts due to the above named companies," the receivers acknowledge payment of $1,306.17 and agree as to the payment of the remaining $1,000 which had been trusteed.

"Further obligations or accounts due to the above named companies" includes all amounts due the four companies for sales made by them or either of them, but it does not include sums due the receivers for sales made by them.

It did not appear at the trial for what reason the receivers here

in question had been appointed receivers. But the fact that they were appointed receivers of itself means that they were not acting as agents of the company of which they were appointed receivers, or on its behalf alone. A receiver is appointed to preserve property the title to which is in litigation until it is determined to whom that property belongs, or in some cases (generally statutory ones) to wind up the affairs of an insolvent corporation, reduce its property to cash and distribute it among its creditors. But whichever of the two be the nature of a particular receivership, money due for a sale by the company before the receivership and money due for a sale by the receiver are quite different in character. In case of a debt due the company for a sale made by it the receiver collects a chose in action of the company. The chose in action is due under a contract made by the company subject to all equities by way of set-off or otherwise which exist between the company and the debtor. In case of a company debt the receiver sues in the name of the company which was party to the contract unless the chose in action has been assigned to him and he is allowed by the law of the forum to bring an action as assignee in his own name. But in case of a debt due for a sale made by a receiver, the receiver is the party to the contract of sale, the action for that reason must be brought in his own name and is not subject to any equities by way of set-off or otherwise which could be set up by the company. The difference between the two is elementary and needs no citation of authorities in its support. We should not have thought it necessary to explain the distinction at length had it not been that the defendant's argument is founded upon a failure to recognize it.

The presiding judge should have instructed the jury that the debt here sued on was not covered by the release. In leaving that question to the jury the judge gave an instruction which was more favorable to the defendant than it was entitled to.

There is one ground on which the exception to the refusal to direct a verdict for the defendant would have had to be sustained had it not been waived by the defendant. This writ was sued out in the name of the "Rochester Tumbler Works, a corporation duly organized under the laws of the State of Maine, which brings this action by Addison Thompson, its trustee and Receiver." Later the writ was amended "by striking out the

words 'by Addison Thompson its trustee and receiver,' and inserting in place thereof the words 'by Addison Thompson and Harry S. Toynbee, its trustees and receivers.' " That is the proper writ for the collection of a debt due under a contract made with the Rochester Tumbler Works. But it is not the proper writ in case it is sought to collect a debt due under the two contracts here in question, one made by the defendant with Thompson when sole receiver and the other by it with Thompson and Toynbee when joint receivers of the Rochester Tumbler Works. But the defendant company in its brief states that "there is no dispute as to the prices charged or as to the receipt of the goods by the defendant. The sole defense was that the plaintiffs' claim had been discharged by an instrument in writing dated February 17, 1910." The objection to the form of the writ was thereby waived, and the entry must be

*Exceptions overruled.*

*H. H. Bond,* for the plaintiff.
*G. P. Wardner,* for the defendant.