WILLIAM S. BARBRICK & others *vs.* ARTHUR M. HUDDELL & others.

ARTHUR M. HUDDELL *vs.* WILLIAM S. BARBRICK & others.

Suffolk. November 23, 1922. — May 26, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, & CARROLL, JJ.

*Voluntary Association. Labor Union. Equity Jurisdiction,* To enjoin unwarranted action by international voluntary association against a local constituent association, Clean hands. *Equity Pleading and Practice,* Master: exceptions to report. *Evidence,* Relevancy and materiality.

The general executive board of the international body of a labor union, who by the union's constitution are given all the executive powers of that body when it is not in session and the power to revoke the charter of a local, constituent union for violation of the constitution and rules of the international body, has no power nor authority to revoke the charter of such a local union merely because it refuses to surrender its charter as one step, stipulated by such board, in an amalgamation with another local union in

its district under a new charter to be issued by the international body, where it appears that such board has no power under the constitution to impose an amalgamation on any local union without its consent; and an order by such board of that purport is void.

Equity has jurisdiction of a suit by officers and members of such a local union against the general executive board of the international body to enjoin the defendants from depriving the local union of its charter, books, papers and other property and from revoking its charter, where it appears that, at the time the controversy arose, the local union was an active, flourishing organization in sound financial condition, that its members were steadily employed, and that it had an office and was recognized by employers as an agency where competent workmen of the class comprising the union might be secured, such a suit involving property rights of the plaintiffs which were threatened with destruction or impairment by unwarranted action by the defendants.

The purported action by the defendants in the suit above described being void and it appearing that resort to remedies within the international body would be accompanied by great delay and that an appeal to the defendants as a board would be an empty formality by reason of their known attitude on the subject matter of the controversy, it was *held* that the suit was properly brought without the seeking by the plaintiffs of further relief within the international body.

The plaintiffs were not prevented from maintaining the suit above described by reason of certain delinquencies and informal conduct on their part in violation of rules of the union, which conduct had no immediate and necessary relation to the equitable relief sought and as to which it was found that there was no intention to violate the rules of the organization and that the variance from strict compliance was due to ignorance or oversight in the performance of routine official duties.

The suit above described was referred to a master. The defendants excepted to a portion of the report in which the master in substance stated, on the question of an appeal by the plaintiffs to the general executive board of the international body, that the board would endeavor to review the case impartially but that their opinions were such that a change of attitude could not be expected. *Held,* that the statement was a finding of fact and, the evidence not being reported, no exception thereto could be sustained.

An exception to a finding by the master in the suit above described, that the suit was authorized properly, cannot be sustained where it appeared from the report that the local union, after a letter from the defendants' president demanding surrender of the plaintiffs' charter, voted to refer the letter to the executive board of the local union with full power to act for the union, that counsel were retained, a suit was brought, and the matter was reported by the plaintiffs' executive committee to a meeting of their local union and a vote of confidence was there given to the board " in handling our case for " the local union.

It was proper at the trial of the suit above described to refuse to permit the defendants' president to be asked, relative to a telegram which was clear and unambiguous, "What was it your intention to vote when you sent that communication?"

The secretary of the plaintiff local union having stated, relative to the approval of a certain working agreement by the defendants' office, that, according

to the best of his belief he sent a copy of the agreement to that office, properly was permitted to state his practice of sending copies of written agreements to the defendants' office.

An exception relating to evidence not shown by the record to be material must be overruled.

It appearing that the defendants in the suit above described contended that the plaintiffs had made no attempt to carry out a vote of the local union to compromise with the international body " if possible," it was proper to permit the local union's secretary to testify that, immediately following proceedings in court on a day when the executive committee had met with counsel and discussed means of adjustment, he had a further conference with counsel who reported that counsel for the defendants had said in effect that it was impossible to do anything in the way of adjustment.

It was proper at the trial of the suit above described to exclude from evidence the opinion of a member of the executive board of the local union, who as such was named as a plaintiff, that the acts of the general president and of the general vice-president of the international body amounted to revocation of the charter of the local union, as well as his opinion that he did not think that the general executive board of the international body had so prejudged the case that a favorable hearing on the appeal would be denied the plaintiffs.

BILL IN EQUITY, filed in the Supreme Judicial Court on October 8, 1921, and afterwards amended, by the officers and members of the executive board of Local Union 263 of the International Union of Steam and Operating Engineers, a voluntary, unincorporated association, who brought the bill " individually and as they are officers and members of " that local union, against the officers and members of the general executive board of the International Union of Steam and Operating Engineers, also a voluntary, unincorporated association, who were sued " individually and as officers and members of " that body, seeking to enjoin the defendants from " taking any action toward the taking of the charter, books, papers or other property of Local Union 263, or revoking said charter and issuing a new charter, or from taking any action either directly or indirectly against said union or the members thereof for the purpose of compelling an amalgamation of said union with Local Union 664;" that " the purported order revoking the charter of Local Union 263 be declared illegal, void and of no effect," and that " the proposed new charter issued in the district of Local Union 263 be declared illegal, void and of no effect."   Also a

BILL IN EQUITY, filed in the Supreme Judicial Court on
October 24, 1921, by the president of the International Union
of Steam and Operating Engineers against certain officers
and members of Local Union 263 and the Commonwealth
Trust Company of Boston, seeking an injunction restraining
the trust company until further order of the court from pay-
ing over any funds or other properties which it may have in
its possession standing in the name of the defendants or of
any of them or which the company knew or believed to be the
property of Local Union 263 or its executive board regardless
of the name or style under which the property might be
entered on its books, and that an injunction might issue
*pendente lite* as well as permanently restraining the defend-
ants, their agents and servants, from further resisting the
orders of the general executive board of the international
body of the union " in the premises and commanding them
to deliver up to the plaintiff the charter, books, property,
funds, and paraphernalia in their possession."

The suits were consolidated and were referred to a master.
Material findings by the master and exceptions by the in-
ternational union to certain rulings by the master as to
evidence and to his report are described in the opinion.

The suits were heard upon the pleadings and the master's
report by *Jenney,* J., and by his order there were entered
interlocutory decrees overruling the exceptions of the in-
ternational body to the master's report and confirming the
report, a final decree dismissing the second suit; and in the
first suit a final decree dismissing the bill as to certain plain-
tiffs, as to whom it was found that they did not desire its
maintenance, without prejudice to the other plaintiffs, in
substance adjudging that " the purported revocation of the
charter of Local Union 263 of the International Union of
Steam and Operating Engineers either by the vote of the
general executive board in May, 1921, or by the action of
the general executive board in September, 1921, or by the
acts of " certain officers of the international body " in Octo-
ber, 1921, or because of anything done under or in reliance
upon said vote, action, or acts, is hereby declared illegal,
void and of no effect; " ordering that the " defendants and

each of them, their attorneys and agents, are hereby restrained and enjoined from taking the charter, books, papers or other property of Local Union 263 by reason of said attempted revocation of its charter as aforesaid," and awarding costs to the plaintiffs.

The international union appealed from all decrees.

*F. W. Mansfield,* for the international union.

*C. B. Cross,* for the local union.

CARROLL, J.   The plaintiffs in Barbrick v. Huddell, at the date of the filing of the bill, were the officers of Local Union 263 of the International Union of Steam and Operating Engineers.   The defendants, with the exception of Charles L. Miller, were at that time the officers and members of the general executive board of the International Union of Steam and Operating Engineers, a voluntary association. The bill seeks to restrain the defendants from taking from Local Union 263 its property, books and papers, from revoking its charter; and also that the proposed charter issued in the district of Union 263, be declared void.   In Huddell v. Barbrick the plaintiff (hereinafter called the defendant), seeks to restrain the plaintiffs in the first bill (hereinafter called the plaintiff), from resisting the order of the general executive board and requiring them to deliver to the defendant the charter, books, funds and property of the Local Union.   A decree was entered for the plaintiffs in the first case, and a decree dismissing the bill in Huddell v. Barbrick.

Local Union 263 was organized in 1904.   It was prosperous and, to some extent, recognized by employers as an agency where competent engineers might be secured.   Local Union 664 had not met with as much success.   In 1921, it was liable to suspension for default in payment of the *per capita* tax due the central headquarters.   Proposals had been made to amalgamate the two unions, and finally both local unions agreed to amalgamate upon condition that Local Union 664 should return its charter to the International office, and that the funds and the money due it should become the property of Local 263 — the entire membership of Local 664 to be admitted to Local 263.   Negotiations followed between the plaintiffs and defendants, and on May

20, 1921, the general secretary wrote to Local 263, informing them that by the vote of the general executive board the amalgamation of the two unions was favored, but not according to the plan submitted; that it could take place only by relinquishing the charters of both local 263 and 664, and by issuing a new charter. On May 28, 1921, Local 263 refused to accept the terms suggested and on May 26, 1921, Local 664 agreed to accept the " ruling of the International." Thereafter all but three members of Local 664 transferred their memberships to Local 263, and in June, Local 664 surrendered its charter.

On the death of the general president of the International organization, Vice-President Huddell succeeded to the office. He interpreted the vote of the general executive board to mean that both locals should surrender their charters and form a new Local under a new number, and he instructed the general secretary to write Local 263 to the effect that both charters should be taken up. No action was taken by Local 263 with reference to this communication, and on August 5, 1921, the general president wrote to Local 263, requesting it to surrender its charter. Further correspondence followed, and on September 14, 1921, the general president wrote insisting on the return of the charter of Local 263 and saying, " I must insist that you do this at once or . . . I will be forced to carry out . . . the instructions of our General Executive Board." At the meeting of the general executive board, he made a report on the amalgamation, and said " that he intended to revoke the charter of Local 263 unless it complied with his letter of September 14." No formal vote was taken by the executive board upon this report, but " the board assented to the statement made and to the action which was proposed." Local 263 did not give up its charter, and the general president instructed the general secretary that the charter of Local 263 was revoked, and wrote to the State convention of the International Union of Steam and Operating Engineers, to the Boston Central Labor Union, and to the Massachusetts State Branch of the American Federation of Labor, that the charter of Local 263 had been revoked and it was

no longer a member of the International Union of Steam and Operating Engineers.

In our opinion the general executive board had no power to revoke the charter of Local 263, except as authorized by the constitution of the organization. Under Article 11, Section 3, the general executive board was given the power to revoke the charter of a local union for violation of the constitution and rules of the International Union of Steam and Operating Engineers and its local union. The master, in his satisfactory report, finds that the attempted revocation of the .plaintiff's charter was not predicated upon such violation of the constitution or rules of the international or local union, but was a mere incident in effecting the combination of the two local unions in accordance with what was claimed to be the meaning of the vote of the general executive board in May, 1921. We have been unable to find that any express authority is given to the general executive board to order an amalgamation of two or more local unions, or to revoke the charter of a local union, except the authority given by Article 11, Section 3; and in taking the charter from Local 263 the executive board did not act under this section and did not revoke the charter because of a violation of the constitution or rules of the union. The fact that under Article 11, Section 1, all the executive powers of the International Union, when the union is not in session, are vested in the general executive board, did not clothe that board with the authority to revoke the charter of Local 263 for the purpose of amalgamating the two unions. Even if the perfecting of this amalgamation could be considered an executive power, it was admitted, according to the master's report, that local unions could not amalgamate without consent of the general executive board, and that this board could not impose an amalgamation on any local union without its consent. Under these circumstances, the general executive board had no lawful power to deprive Local 263 of its charter in order to bring about the combination of Local 263 with Local 664 under a new charter. The action of the board in revoking the charter was void.

The vote of the general executive board in May, 1921, rejected the plan of uniting the two local unions as proposed

above, and suggested a new plan by which this end could be accomplished; and the letter of May 20, from the general secretary, was in effect merely a proposal for an amalgamation by taking up both charters and issuing a new one. There was, up to this time, no action of the general executive board revoking the charter of Local 263, and as neither the general executive board nor the general president could revoke the charter for the purpose of bringing about a union of the two locals, we are not called upon to decide whether the informal action of the board in September, 1921, in assenting to the proposal of the general president to revoke the charter of Local 263 unless it complied with his letter of September 14, did in fact attempt to authorize the revocation of the charter.

The general executive board were without lawful authority to deprive the plaintiffs of their charter in order to accomplish this amalgamation. The plaintiffs can seek relief in equity. Local Union 263, the master has found, was at the time the controversy arose, an active, flourishing organization in sound financial condition. Its members were steadily employed, it had an office, and was recognized by employers as an agency where competent men in the craft could be secured. It regarded its name and number as of value and desired to retain its identity. It was not antagonistic to the International Union and was desirous of retaining harmonious relations with it. The defendants demanded that the plaintiffs surrender their charter and property, and the defendants in their bill, sought to compel the plaintiffs to deliver the books, property and funds of the union.

Something more than mere membership in a voluntary association is embraced in this case. It involves the life of the organization known as Local 263, with its funds and property, its associations and reputation, and all the rights and privileges of its members. The plaintiffs were members of this union, and they desired to continue in such membership. Their right to labor is property, " and as such merits protection. The right to make it available is next in importance to the rights of life and liberty." *Slaughter-House*

*Cases,* 16 Wall. 36, 127. *Bogni* v. *Perotti,* 224 Mass. 152. Their right to enjoy whatever advantages membership in this union would bring them in their calling, could not be taken away by the unlawful action of the general executive board. In our opinion property rights are involved and equity will assume jurisdiction to protect them. *Hanson* v. *Mayers,* 243 Mass. 25. *Mesisco* v. *Giuliano,* 190 Mass. 352. *Boston Club* v. *Potter,* 212 Mass. 23.

The defendants contend the plaintiffs have not exhausted the remedies within the organization, and that for this reason resort cannot be had to the courts. The general rule is that remedies within the organization must be sought before appealing to the courts. *Karcher* v. *Knights of Honor,* 137 Mass. 368. The proceedings within the union for revocation of the charter of the plaintiffs were void, being without authority under the constitution. Any appeal within the association, must have been to the general executive board. As to their attitude the master found: " The General Executive Board . . . has already considered the matter. They have adopted in their entirety the views and purposes of the General President. The case was fully presented to them at the meeting in September, 1921, and while they would endeavor to review the case impartially and fairly, their prepossessions are such that a change of attitude on their part under all the circumstances could not be expected." Under these circumstances an appeal would have been futile. The law does not require a vain form. *Correia* v. *Portuguese Fraternity,* 218 Mass. 305, 309.

The defendants further contend that the plaintiffs have violated certain provisions of the constitution and do not come into court with clean hands. The constitution required that all business of the union should be kept " strictly private " from persons outside the local union, unless publication of the same be authorized by vote of the local union. It was found that at a meeting of Local 263 in October, 1921, which the vice-president of the International Union attended, a stenographer was present for the purpose of taking notes; this was deemed advisable in view of the state of the controversy. The rules required that all committees should

report in writing; it appeared that at two meetings reports of committees appointed to confer with similar committees of No. 664, reported orally. The rules also required that all agreements between local unions and individual firms should have the sanction of the general president. Some of the working agreements with employers were not reported to the general president and none of the contracts of Local 263 with employers received the affirmative sanction of the general president. It was also found that the " clearance card " which is issued to a member who is transferred from one local to another, must bear the signature of the recording secretary as well as the signatures of other officers; that three hundred and eighty-seven members of Local 664 transferred to Local 263, and the clearance cards of seven of these members did not bear the signature of the recording secretary. With reference to all of these delinquencies upon which the defendants rely, the master found that there was no intention to violate the rules of the organization, that the variance from their strict compliance was due to ignorance or oversight in the performance of routine official duties, and had no necessary relation to the relief sought.

The plaintiffs are not to be deprived of relief because they unintentionally violated some of the rules of the organization when these acts had no immediate and necessary relation to the equity sued for. The principle that one must come into equity with clean hands is not applicable under the facts found in this case. *Lurie* v. *Pinanski*, 215 Mass. 229. *Warfield* v. *Adams*, 215 Mass. 506, 523, 524.

The defendants filed objections and exceptions to the master's report. Some of these exceptions are to the effect that the master's findings are conclusions of law. Many of them are findings of fact. Even if it be assumed that some of them are conclusions of law, there was no harmful error in them. On the question of the appeal to the general executive board the master found that the board would endeavor to review the case impartially, but their opinions were such that a change of attitude could not be expected. This was a question of fact. The evidence is not reported and we see no error in this finding.

The defendant objected to the finding that the plaintiff's suit was properly authorized. It was found that Local 263, after the letter of the general president of September 14, 1921, voted to refer the letter to the executive board of the local union, with full power to act for the union. Counsel were retained and a suit brought, and the matter reported by the executive board to Local 263. A vote of confidence was given the board " in handling our case for Local Union 263." It further appeared that some of the plaintiffs were improperly joined, but the bill was dismissed as to them. This exception of the defendant was overruled properly. Without reviewing the other exceptions of the defendant in detail, we see no error in the interlocutory decree overruling them.

The defendants also excepted to rulings of the master in admitting and excluding evidence. These are embodied in their objections and exceptions to the report, and are therefore before us. The general president was shown the telegram of his vote on the question of amalgamation of the two unions. He was asked, " What was it your intention to vote when you sent that communication?" The telegram read, " I vote ' no ' on the plan submitted but I am in favor of amalgamation of Nos. 263 and 664. I vote ' yes ' on amalgamation of the two Local Unions provided both charters are taken up and a new charter issued." There was no error in excluding this testimony. See *Rochester Tumbler Works* v. *Mitchell Woodbury Co.* 215 Mass. 194; *New York Central Railroad* v. *Swenson,* 224 Mass. 88.

The secretary of Local 263 was asked concerning the approval of a certain working agreement by the " International Office." He stated that according to the best of his belief he sent a copy of the agreement to the International office. The defendant objected to the inquiry as to his practice of sending copies of written agreements to the International office. This evidence was admissible, and tended to show the secretary's course of business. The third exception related to a request to the secretary of Local 263 to produce a certain memorandum book. It did not appear that the book was in any way material to

the issue involved in the case. This exception was over-ruled properly. The fourth exception is not argued.

It appeared that on October 13, 1921, Local 263 voted to compromise " with International, if possible." The contention was made at the hearing that no attempt was made by the plaintiffs to carry out this vote. The following day the case came on for a hearing and the executive committee met with counsel and discussed the means of adjustment. The secretary of Local 263 testified that, immediately following the proceedings in court, he had a further conference with counsel, who reported that counsel for the defendants said in effect that it was impossible to do anything in the way of adjustment. In view of the contentions made by the defendants, we think this evidence could be received as bearing on the attempt on the part of the plaintiffs to carry out the vote. The sixth exception is not argued. The opinion of the witness Abbott, a member of the executive board of Local Union 263 who as such was named as a plaintiff, that the general president's and the general vice-president's acts amounted to a revocation of the charter of Union 263 was properly excluded; as was his opinion that he did not think the general executive board had so pre-judged the case that a favorable hearing on the appeal would be denied the plaintiffs.

All the exceptions were overruled properly.

The interlocutory decree in Barbrick v. Huddell, over-ruling the defendant's exceptions to the master's report and the final decree in that case, as well as the decree dismissing the bill in Huddell v. Barbrick are affirmed.

*So ordered.*